JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Jeremy Perez (Perez), appeals from the judgment of the trial court that found him guilty of all counts set forth in the indictment against him. For the reasons below, we affirm appellant's convictions.
 {¶ 2} On November 7, 2006, Perez was indicted on two counts of felonious assault, in violation of R.C. 2903.11, both with one-and three-year firearm specifications, in violation of R.C. 2941.141 and R.C. 2941.145, respectively. The first count of felonious assault alleged that appellant "did knowingly cause serious physical harm to Angelo Lemons." The second count alleged that Perez "unlawfully and knowingly did cause or attempt to cause physical harm to Angelo Lemons by means of a deadly weapon or dangerous ordnance, to wit: firearm, as defined in Section 2923.11 of the Revised Code."
 {¶ 3} Prior to the scheduled jury trial, Perez, with his first retained counsel present, elected to have all counts and specifications heard to the bench.
 {¶ 4} The case proceeded to a bench trial on May 30, 2007. The State of Ohio presented eight witnesses and rested its case on May 31, 2007. Perez moved for a Civ. R. 29 motion for judgment of acquittal at the close of the State's case, which was denied. He testified on his own behalf and presented seven other witnesses. The trial concluded on June 1, 2007, and Perez was found *Page 4 
guilty on both counts of the indictment and guilty of the accompanying firearm specifications attached to each count.
 {¶ 5} Prior to sentencing, counsel for Perez withdrew. Perez retained new counsel and was sentenced, on July 12, 2007, to an aggregate prison sentence of five years (two years on each count to run concurrent, and three years on the firearm specifications, which were merged for sentencing purposes and ordered to run prior to and consecutive to the two years on counts one and two). Three years of mandatory postrelease control was also ordered.
 {¶ 6} Perez timely appealed from the final judgment entered in this case on July 12, 2007.
 {¶ 7} The facts giving rise to this appeal are as follows:
 {¶ 8} In the early morning hours of October 29, 2006, the victim, Angelo Lemons (Lemons) and his girlfriend, Chantal Elza (Elza), were at Corky's Bar (Corky's) in Lakewood, Ohio. Perez, his wife, and six of their friends were at Corky's for a Halloween costume party.
 {¶ 9} While at the bar, Elza saw Greg Melnyk (Melnyk), the father of her child. Melnyk was a friend of Perez and lived with him and his wife at their home in Lakewood. Elza became upset when she saw Melnyk drinking an alcoholic beverage because she felt he was "supporting his alcohol" instead of paying his child support obligations for their son. *Page 5 
 {¶ 10} There is dispute between the prosecution and defense witnesses as to who initiated the confrontation between Elza and Lemons and the group of friends with Perez at the bar that morning. It is undisputed that fights broke out across the entire bar at approximately two in the morning, and that Lakewood police were called to respond to the scene of a chaotic bar fight at Corky's.
 {¶ 11} At trial, Elza and Lemons maintained that they were jumped and pummeled by some members of Perez's entourage. However, witnesses for Perez testified that it was Lemons who initially grabbed Melnyk from behind and that another in Perez's group, Nizam Jawhari (Jawhari), had to bear-hug Lemons to get him off of Melnyk.
 {¶ 12} Perez and various members of his group testified that thereafter, Lemons made gestures of reaching behind his back to the waistband of his pants, leading them to believe that he was reaching for a gun. It is undisputed, however, that none of the witnesses saw a gun on Lemons's person at the bar that morning.
 {¶ 13} Perez and the other members of his group left the bar before the police arrived. However, Jawhari went to the front of the bar and then outside of Corky's to tell the police that he and his friends believed that Lemons had a weapon. The Perez group picked Jawhari up in front of the bar and proceeded to the Perez residence at 1505 Olivewood, Lakewood, Ohio. When Elza and *Page 6 
Lemons exited the bar, they told the police their version of what occurred inside Corky's bar during the melee.
 {¶ 14} Officer Dwayne Brown (Brown) of the Lakewood Police Department testified that, upon responding to the call regarding a bar fight at Corky's Bar that morning, he encountered Lemons outside the bar. Officer Brown testified that he searched Lemons for a weapon and did not find one. Officer Brown accompanied Lemons back inside the bar to see if he could identify any of the parties who had engaged him in the altercation. None of the individuals were at Corky's. Officer Brown advised Lemons to go home.
 {¶ 15} Perez's wife drove everyone in the group back to the Perez home. Once there, Perez immediately began to cook a meal for the group.
 {¶ 16} Disregarding Brown's advice, Elza and Lemons waited approximately five minutes and proceeded together in Elza's car to the Perez home. Elza testified that this was the last place she knew Greg Melnyk lived. Elza further testified that the purpose of her visit was to tell Melnyk that he was no longer allowed to see their son and that she "was going to be cutting the ties that night."
 {¶ 17} According to Elza's testimony, when she and Lemons arrived at the Perez's residence, she knocked a few times and someone inside told her to come in. Once she opened the door, she saw all of the people that had just physically attacked her at the bar and decided not to go inside. She asked for Greg Melnyk, *Page 7 
but the first person to come to the door was Perez, who pointed a gun at her. Elza and Lemons, who had joined Elza on the porch, immediately turned and walked off the porch. Both Elza and Lemons testified that they heard a gunshot when they were on the bottom step in front of Perez's residence, and further testified that they heard a total of three to four gunshots as they were walking back toward their vehicle, which was parked at 1513 Olivewood, the second house south of the Perez residence.
 {¶ 18} Once at the vehicle, Elza discovered that her car would not start and that Lemons had been shot. A bullet from Perez's gun had entered the rear of Lemon's calf and exited the front of his shin. The trail of blood started on the sidewalk in front of 1509 Olivewood, the house between the Perez residence and the house where Elza had parked her car. No sign of blood was observed in front of Perez's residence.
 {¶ 19} Elza called 9-1-1, and the Lakewood Police arrived immediately after the shooting. Perez initially told them he had fired a BB gun at the victim; however, once one of the officers informed him that Lemons had an entry and an exit wound, he admitted that he shot Lemon with a weapon other than a BB gun and pointed out the location of the weapon. The police found a .25 Czech Republic semiautomatic pistol hidden under a garbage bag, in the bottom of a trash can inside Perez's home. Perez, having admitted to firing a handgun, was *Page 8 
remorseful, apologetic, and agreed to a gunshot residue test of his hand and clothing, which was positive.
 {¶ 20} Lakewood Police officers recovered three shell casings from the tree lawn and in the street in front of the Perez residence.
 {¶ 21} Lemons and Dr. Pearse, his treating physician at Lakewood Hospital where Lemons was taken after the shooting, testified as to the nature and extent of the injuries to Lemons's leg as a result of the gunshot. Lemons was in the hospital for about four weeks. He experienced severe pain and a difficult rehabilitation, including approximately a month and a half of physical therapy.
 {¶ 22} Perez testified that he went outside on the front porch alone with his gun in hand when Elza and Lemons showed up at his house. Perez testified that he fired the shots from the porch, but that he did not intend to hit Lemons, and that he just wanted to scare him. He stated that one of the bullets must have ricocheted on the sidewalk and hit Lemons's leg.
 {¶ 23} Perez's five fact witnesses testified that they did not actually see Lemons with a gun at the bar earlier that morning, nor did they see Perez involved in any altercation at Corky's bar earlier that morning. None of the witnesses were outside the Perez residence at the time of the shooting; however, they testified to hearing the gunshots.
 {¶ 24} Perez appeals, asserting six assignments of error for our review.
 Assignment of Error No. I *Page 9 
 "THE TRIAL COURT ERRED IN NOT PERMITTING MEDICAL TESTIMONY REGARDING APPELLANT'S WEAKENED MEDICAL CONDITION."
 {¶ 25} Perez argues that the trial court erred in not allowing Dr. John Hanicak to testify that Perez was in a weakened physical condition on October 29, 2006. Perez offered a copy of Dr. Hanicak's report as a proffer of his testimony, which is included as a part of the record. As stated by defense counsel at trial, "what we're going to show through the good doctor here is my client was not in good physical shape. *** [I]f he was, he might have acted, potentially could have acted, punched, kicked, what have you." (Tr. 141.)
 {¶ 26} "THE COURT:
 If that's all the doctor is going to testify to, physical condition of this Defendant, and you're — you can make a proffer as to what his testimony is going to be but I'm going to say that the doctor can't testify unless he has other matters to which he's going to testify.
 * * *
 MR. SLAVIN:
 The proffer we would make on behalf of the Defendant in this case is Dr. Hanicak would testify as to my client's weakened condition as indicated in his letter dated January 2nd, 2007, that indicated Jeremy/Vail Perez's weakened condition on October 28th, 2007. I would offer that report as a proffer." (Tr. 141-142.)
 {¶ 27} Perez later testified at trial that he had pneumonia on October 29, 2006, and was recovering from methicilln resistent staphylococcus aureus *Page 10 
(MRSA) of his right lung. He stated that he developed this condition when his lower right lung collapsed a year earlier.
 {¶ 28} Perez argues that the exclusion of Dr. Hanicak's testimony was in error as it would have assisted in demonstrating his mental state and, in so doing, would have supported the following: his claim of self-defense; a finding of aggravated assault, as it would have corroborated the subjective aspect of his belief that he was the subject of provocation from Lemons; and a finding of assault, as it would have corroborated his contention that he acted recklessly instead of knowingly when causing serious physical harm to Lemons.
 {¶ 29} The trial court, in its response, impliedly determined that the evidence was not relevant. The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v.Sage (1987), 31 Ohio St.3d 173, at paragraph two of the syllabus. To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 30} We cannot say that the exclusion of the trial court of Dr. Hanicak's testimony was unreasonable, arbitrary or unconscionable, as the trial court heard testimony at trial from Perez himself as to the effect such physical condition had on his state of mind. Evid. R. 403(B) specifically provides that exclusion of relevant evidence is discretionary. "Although relevant, evidence *Page 11 
may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."
 {¶ 31} Perez's first assignment of error is overruled.
 {¶ 32} The second and third assignments of error will be addressed together as they are closely related in facts and law. They state as follows:
 {¶ 33} Assignment of Error No. II
 "APPELLANT'S CONVICTIONS ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE WHERE THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE THAT THE APPELLANT ACTED KNOWINGLY."
 Assignment of Error No. III
 "THE TRIAL COURT'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 34} In his second assignment of error, Perez argues that the trial court erred in denying his motion for acquittal because his conviction was not supported by sufficient evidence. In his third assignment of error, he contends that his conviction was against the manifest weight of the evidence. Perez's discussion as to both of these assignments is limited to the trial court's finding regarding the "knowledge" element as to both counts of felonious assault. As these arguments involve different standards of review, but a review of the same evidence, we discuss them together.
 {¶ 35} The standard of review for sufficiency of evidence is set forth in the seminal case of State v. Bridgeman (1978), 55 Ohio St.2d 261. *Page 12 
 "Pursuant to Criminal Rule 29 (A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." Id. at syllabus.
 {¶ 36} We noted in State v. Bradley, Cuyahoga App. No. 87024,2006-Ohio-4589, that "Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks (1991), 61 Ohio St.3d 259
***." The Supreme Court held:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Bradley at ¶ 12, citing Jenks at paragraph two of the syllabus and quoting Jackson v. Virginia (1979), 443 U.S. 307.
 {¶ 37} According to State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, the standard in reviewing a weight of the evidence challenge is a distinct legal concept both quantitatively and qualitatively different from the sufficiency standard.Thompkins further described this standard as follows:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *Page 13 greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief .' Id. at 387, quoting Black's Law Dictionary (6 ED. 1990) at 1594. (Emphasis in original.)
 * * *
 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id. at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172.
 {¶ 38} The essential elements of the felonious assault charges brought against Perez are set forth in R.C. 2903.11, which provides:
 "(A) No person, shall knowingly do either of the following:
 "(1) Cause serious physical harm to another or to another's unborn;
 "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 39} With regard to Perez's challenge to the sufficiency of the evidence, Perez argues that the element of the felonious assault charges not proven was the criminal intent of "knowingly" set forth in both sections of the felonious statute of which he was convicted. He argues that while there is evidence that he may have acted recklessly, if not in self-defense of himself and his guests, there was no evidence presented that he acted "knowingly," which is the *Page 14 
necessary mens rea for the offense of felonious assault under both subsections of R.C. 2903.11.
 {¶ 40} R.C. 2901.22(B) defines the mental state of "knowingly" as follows:
 "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will cause a certain result or will probably be of a certain nature. A person has knowledge of the circumstances when he is aware that such circumstances probably exist."
 {¶ 41} The state presented evidence, through the testimony of Lemons and Elza, that Perez knowingly and voluntarily fired three shots from a deadly weapon in the direction of Lemons that resulted in serious physical injury to Lemons. Perez's own testimony established that when he fired the second shot, Lemons and Elza were walking back to her car. He also testified that he aimed the gun in Lemons's general direction, and admitted in his written statement to the police that he "fired three shots at the guy."
 {¶ 42} Perez claims that he was only trying to scare or warn Lemons and Elza to stay away from his residence. However, as set forth above in R.C. 2901.22(B), a person acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B) does not require the State to prove that Perez knew he would cause any specific injury to Lemons. See, State v. Dixon, Cuyahoga App. No. 82951, 2004-Ohio-2406, at ¶ 24.
 {¶ 43} Moreover, as recently noted by this court in State v.Norris, Cuyahoga App. No. 91000, 2009-Ohio-34:
 "It is common knowledge that a firearm is an inherently dangerous instrumentality, use of which is reasonably likely *Page 15 to produce serious injury or death. State v. Widner (1982), 69 Ohio St.2d 267, 270, 431 N.E.2d 1025. Courts have consistently held that shooting a gun in a place where there is risk of injury to one or more persons supports the inference that the offender acted knowingly. See, e.g., State v. Brooks (1989), 44 Ohio St.3d 185, 192, 542 N.E. 2d 636; State v. Ivory, Cuyahoga App. 83170, 2004-Ohio-2968; State v. Roberts (Nov. 9, 2001), Hamilton App. No. C-000756, 2001 Ohio App. LEXIS 4991, citing State v. Gregory (1993), 90 Ohio App.3d 124, 628 N.E.2d 86; and State v. Phillips (1991), 75 Ohio App.3d 785, 792, 600 N.E.2d 825." Norris at ¶ 20.
 {¶ 44} In light of the foregoing, we cannot say that, after reviewing the evidence in the light most favorable to the prosecution, Perez's conviction for felonious assault was unsupported by sufficient evidence. Any rational trier of fact could have found the essential elements of felonious assault proven beyond a reasonable doubt. Bradley at ¶ 12.
 {¶ 45} With regard to Perez's challenge to the weight of the evidence, in addition to the previously cited standard of review, we are mindful of the following:
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the *Page 16 evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. (`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')" Thompkins at 387. (Internal citations omitted.)
 {¶ 46} Furthermore, credibility of witnesses and the weight to be given to their testimony are primarily matters for the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus. A trier of fact is entitled to believe or not to believe the State's witnesses and/or the defense's witnesses. State v.Antill(1964), 176 Ohio St. 61. Contrary to Perez's argument regarding inconsistencies in Elza's and Lemons's testimony, the trial court did not have to believe all of their testimony. Their testimony was consistent with the testimony of Perez in that they testified they were walking back to their car when he fired the second shot. *Page 17 
 {¶ 47} The evidence regarding the element of "knowingly" has been reviewed with regard to the second assignment of error. In the third assignment of error, Perez again argues that he did not knowingly intend to injure Lemons. However, as stated previously, Perez's action of firing a gun as Elza and Lemons were leaving the area established the mens rea element of the offense of felonious assault. "The shooting of a gun in a place where there is a risk of injury to one or more person supports the inference that appellant acted knowingly." Gregory
at ¶ 131.
 {¶ 48} Though Perez argues that his conviction is against the manifest weight of the evidence, we find that the trier of fact was in the best position to weigh the evidence and the credibility of the witnesses. The trial court believed that Perez knowingly intended to shoot at Lemons resulting in his serious physical injury, and we cannot disagree with its verdict. As the reviewing court, we are unable to state that the evidence weighs heavily against Perez's conviction or that the trier of fact lost its way in convicting him. The trial court did not create a manifest miscarriage of justice by convicting Perez of felonious assault under R.C. 2903.11(A)(1), nor of felonious assault with a deadly weapon under R.C. 2903.11(A)(2), as evidence was presented by the State as to each and every element of these offenses.
 {¶ 49} The second and third assignments of error are overruled.
 Assignment of Error No. IV *Page 18 
 "THE TRIAL COURT ERRED IN NOT ALLOWING DEFENSE WITNESSES TO TESTIFY AS TO THE THREATS MADE BY THE STATE'S TWO PRIMARY WITNESSES TOWARD THE APPELLANT AND HIS GUESTS."
 {¶ 50} Perez contends that the trial court erred by excluding testimony from defense witnesses regarding the substance of various verbal threats allegedly made by Lemons and Elza the morning of October 29, 2006, both at the bar and at the Perez residence. He contends the statements should have been permitted to show his state of mind.
 {¶ 51} We find that even if the trial court did err in failing to admit them as non-hearsay statements offered to show Perez's state of mind rather than the truth of the matter asserted, the preclusion was not prejudicial. Perez did testify as to the substance of the threats made at his residence. Perez testified "[h]er and Angelo were on the porch screaming threats that I'm not allowed to say, of course, to the effect of causing extreme bodily harm to everybody in the house." Perez also testified that Lemons "was talking in a manner that suggested I would be dead pretty soon."
 {¶ 52} Because the trial court as fact finder was aware that Perez was being threatened, its ruling excluding the testimony of defense witnesses as to threats made by Lemons and Elza toward Perez and his group did not prejudice him. *Page 19 
 {¶ 53} See State v. Berger, Cuyahoga App. No. 87603, 2006-Ohio-6583, at ¶ 13. See, also, Evid. R. 403(B).
 {¶ 54} The fourth assignment of error is overruled.
 {¶ 55} The fifth and sixth assignments of error will be addressed together as they are closely related in facts and law. They state as follows:
 Assignment of Error No. V
 "TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST THAT THE TRIAL COURT CONSIDER THE OFFENSE OF ASSAULT AS A LESSER INCLUDED OFFENSE [OF] FELONIOUS ASSAULT."
 Assignment of Error No. VI
 "THE TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST THAT THE TRIAL COURT CONSIDER THE OFFENSE OF AGGRAVATED ASSAULT AS AN INFERIOR OFFENSE OF FELONIOUS ASSAULT."
 {¶ 56} Perez contends that his trial counsel was ineffective when he failed to request the trial court to consider a charge of assault and/or aggravated assault.
 {¶ 57} An appellate court applies a two-pronged analysis when reviewing an ineffective assistance of counsel claim. In order to prevail on a claim of ineffective assistance of counsel, the defendant must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Strickland v. Washington (1984),466 U.S. 668, 687; Bradley, supra. Counsel's performance may be found *Page 20 
to be deficient if counsel "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland at 687. To establish prejudice "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley at 143.
 {¶ 58} In determining whether counsel's performance fell below an objective standard of reasonableness, "judicial scrutiny of counsel's performance must be highly deferential." Strickland at 689. Because of the difficulties inherent in determining whether counsel rendered effective assistance in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 59} Perez contends that defense counsel was ineffective because he failed to ask the court to consider the charges of aggravated assault and/or assault in its deliberations.
 {¶ 60} The State concedes that the evidence presented could have supported a request for consideration of aggravated assault. However, "[t]rial counsel could have reasonably concluded that presenting the fact finder with conflicting theories of the case would have been counterproductive." State v. Baker (2005), 159 Ohio App.3d 462, 466. Aggravated assault requires demonstration on the defendant's part that he knowingly caused serious physical harm to another, or caused or attempted to cause physical harm to another by *Page 21 
means of a deadly weapon, either out of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation caused by the victim that was reasonably sufficient to incite the defendant into using deadly force. R.C. 2903.12(A); State v. Deem,40 Ohio St.3d 205, 210-211.
 {¶ 61} We agree that Perez's trial counsel could have reasonably decided not to request the court to consider aggravated assault in the hope of obtaining a complete acquittal of the two counts of felonious assault charged in the indictment. He may well have believed that the inferior degree offense of aggravated assault conflicted with the theory of self-defense that he presented at trial, or might confuse the trier of fact. See State v. Caitlin, 56 Ohio App.3d 75. Moreover, in a bench trial it is presumed that the trial court considered the appropriate inferior and lesser-included offenses and defenses. See State v.Waters, Cuyahoga App. No. 87431, 2006-Ohio-4895, at ¶ 11.
 {¶ 62} Furthermore, the test for a claim of ineffective assistance of counsel is whether the defense chosen by defense counsel was objectively reasonable, Strickland at paragraph 2(a) of the syllabus.
 "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to *Page 22 
conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Id. at 689-690. (Internal citations omitted.)
 {¶ 63} As stated in State v. Crawford, Montgomery App. No. 22314,2008-Ohio-4008:
 "[A]n appellant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. The test for a claim of *Page 23 ineffective assistance of counsel is not whether counsel pursued every possible defense; the test is whether the defense chosen was objectively reasonable. A reviewing court may not second-guess decisions of counsel which can be considered matters of trial strategy. Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available." (Internal citations omitted)."
 {¶ 64} Assault under R.C. 2903.13(A) is a lesser included offense of felonious assault under R.C. 2903.11(A)(2). State v. Goodwin (1995), Montgomery App. No. 14269, 1995 Ohio App. LEXIS 203. Even where an offense may be statutorily defined as a lesser included offense of another, a charge on the lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. State v. Koss (1990), 49 Ohio St.3d 212, 218; State v.Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus;State v. Kidder (1987), 32 Ohio St.3d 279.
 {¶ 65} A court must view the evidence in a light most favorable to the defendant when deciding whether to consider the lesser included offense.State v. Wilkins (1980), 64 Ohio St.2d 382, 388. Since a trial court has discretion in *Page 24 
determining whether the record contains sufficient evidentiary support to warrant consideration of a lesser included offense, an appellate court will not reverse that determination absent an abuse of discretion.State v. Wright, 4th Dist. No. 01 CA2781, 2002-Ohio-1462.
 {¶ 66} The distinguishing element between felonious assault, in violation of 2903.11(A)(2), and assault, in violation of R.C. 2903.13(A), is whether the assailant used a deadly weapon. State v.Gunther (1998), 125 Ohio App.3d 226, 239-240.
 {¶ 67} In construing the evidence in favor of Perez, we cannot say that the trial court could have found that he committed an assault without "a deadly weapon or dangerous ordnance." The consistent testimony of all witnesses who were outside at the time of the shooting, including that of Lemons, Elza, and even Perez, was that Lemons was struck in his calf with a bullet emanating from the gun that Perez had fired from the area of his residence in Lemons's direction.
 {¶ 68} The trial court judge could not have found Perez guilty of simple assault when all testimony adduced at trial demonstrated he used a gun to shoot at Lemons and actually hit him with a bullet in the calf area of his leg, causing serious injury.
 {¶ 69} As previously stated, we have found that Perez's conviction was supported by the manifest weight of the evidence and that the trial court did not commit any error in failing to consider the charges of assault and/or aggravated *Page 25 
assault. Given these determinations, the failure of counsel to request consideration of such offenses was not ineffective assistance of counsel. Perez has failed to show that, but for the alleged error on the part of his trial counsel to ask the court to consider these lesser included charges, the outcome of his trial clearly would have been otherwise. See State v. McClain, Cuyahoga App. No. 77740, 2002-Ohio-2349.
 {¶ 70} The fifth and sixth assignments of error are without merit and are overruled.
 {¶ 71} However, we note sua sponte that the appellant was found guilty of two counts of felonious assault against one victim, R.C. 2903.11(A)(1) and R.C. 2903.11(A)(2), knowingly causing serious physical harm and causing physical harm by means of a deadly weapon. The Ohio Supreme Court has held that, "[b]ecause [a defendant's] convictions arise from a single act and animus pursuant to R.C. 2941.25, [the defendant] may only be convicted of one form of the offense of aggravated assault." State v. Brown, 119 Ohio St.3d 447, 2008-Ohio-4569.
 {¶ 72} Judgment affirmed. Case remanded for correction of the conviction entry. The State is to elect which of the defendant's two felonious assault charges would merge into the other for purposes of conviction and sentence, and the trial court is to enter a correction of the conviction entry accordingly. *Page 26 
 {¶ 73} It is ordered that appellee recover from appellant costs herein taxed.
 {¶ 74} The court finds there were reasonable grounds for this appeal.
 {¶ 75} It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 CHRISTINE T. McMONAGLE, J., and MELODY J. STEWART, J., CONCUR *Page 1