[Cite as *State v. Winters*, 2016-Ohio-928.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 102871

---

# STATE OF OHIO

### PLAINTIFF-APPELLEE

vs.

# TROY WINTERS

### DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-583833-B

**BEFORE:** Boyle, J., Keough, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 10, 2016

**ATTORNEY FOR APPELLANT**

Walter H. Edwards, Jr.
614 W. Superior Avenue, Suite 1300
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Erin Stone
Assistant County Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, J.:

{¶1} Defendant-appellant, Troy Winters, appeals his conviction and the imposition of court costs, raising the following five assignments of error:

I. The appellant's convictions are against the manifest weight of the evidence where the government failed to prove the identity of the actor.

II. Trial counsel was ineffective when counsel failed to present testimony regarding the unreliability of eyewitness identification testimony.

III. Trial counsel was ineffective for failing to request a *Telfaire* jury instruction.

IV. Trial counsel was ineffective when it failed to request a castle doctrine jury instruction.

V. The trial court erred in imposing court costs in the journal entry when the court agreed not to impose costs at the time of the sentencing hearing.

{¶2} After a thorough review of the record and arguments raised, we affirm Winters's convictions but remand the matter for a nunc pro tunc correction of the sentencing entry to indicate that court costs are waived.

## A. Procedural History and Facts

{¶3} In April 2014, Winters, along with two codefendants, David Capp and John Jones, was indicted on the following three counts in connection with the shooting of James Marshall: (1) felonious assault in violation of R.C. 2903.11(A)(1); (2) felonious assault in violation of R.C. 2903.11(A)(2); and (3) discharging of a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3). All three counts carried a one- and three-year firearm specification. Winters pleaded not guilty to the charges and the

matter proceeded to a jury trial. We set forth the following relevant facts to the disposition of this appeal.

{¶4} Jennifer Hayne testified that on March 18, 2014 at 2:45 p.m. — 15 minutes before the end of her work shift — she received a telephone call from her neighbor that Capp was at her house. Hayne explained that Capp was an ex-boyfriend, who she stopped talking to three weeks earlier. Hayne further explained that she was currently dating the father of her oldest daughter, James Marshall, who she had known for the past 13 years and dated intermittently throughout that time. At the end of her shift, Hayne immediately drove home and called Capp, who was no longer at her house. According to Hayne, Capp was "very irate" and told her that he was coming over to the house "to beat my boyfriend up." Ten minutes later, Capp arrived at the house in a red S-10 pickup truck, driven by Winters, whom Hayne had first met in 2007 and considered an acquaintance.

{¶5} According to Hayne, both men were very disrespectful; Winters asked, "where's your boyfriend at? When's he coming?" And then he threatened, "we got something for him." Hayne further testified that Capp was "screaming, yelling, cussing." Hayne called Marshall and told him that Capp and Winters were outside the house. The men waited approximately 15 minutes and then left. Minutes later, Marshall and his father arrived at Hayne's house. Shortly thereafter, Capp and Winters returned to the house.

**{¶6}** Hayne testified that she was standing in the front yard of her house when she observed Winters pulling up in a red S-10 pickup truck and parking approximately "two to three" houses away. She pointed the truck out to Marshall, who walked toward the truck. Hayne further testified that she did not see Capp right away but noticed him when "he popped up from the bed of the truck," stating "T, we're going to spray this bitch up and dip." Immediately following this statement, "gunshots started going off." At this point, Marshall was standing on the driver's side of the vehicle, near the driver's door, and was shot three times in his legs.

**{¶7}** The next day, Hayne met with Sergeant Shoulders of the Cleveland Police Department and identified Winters in a photo array presented to her. Hayne indicated that she was "100% certain" of her identification of Winters. She further identified John Jones as the front-seat passenger, indicating that she was "99% certain."

**{¶8}** The state presented the testimony of Marshall, who corroborated much of Hayne's testimony. Marshall testified that Hayne called him on March 18, 2014, while he was attending an outpatient program. According to Marshall, Hayne seemed "real frantic" and he could hear Capp in the background, screaming "Fuck you bitch. Tell him to come on. I'm about to fuck you all up." Marshall left his meeting and met his father, who was outside waiting for him, and the two of them immediately went to Marshall's house that he shared with Hayne.

**{¶9}** Marshall testified that they arrived home around 3:30 p.m. and that there was a group of neighbors outside the home. Minutes later, a red S-10 pickup truck

pulled up on the street and stopped approximately 60 feet from Marshall's house. Marshall approached the truck. Although Marshall observed the driver, he did not recognize him at first but later learned his identity to be Winters. According to Marshall, upon reaching the truck, the first thing that he noticed was the opened driver's-side door and then he saw the front-seat passenger hand Winters a gun. Next, Marshall heard Capp, who was in the back of the truck, state "kill that mother fucker." Immediately following, Winters had the gun in his hand, firing a shot and hitting the ground next to Marshall's foot. Marshall further testified that Winters shot the gun three more times, with two bullets hitting Marshall's left thigh and one bullet entering his right thigh. After the shots were fired, the red truck sped away.

{¶10} Marshall further testified that he correctly identified Capp in a photo array following the shooting. In identifying Capp, he stated that he was 95 percent certain. Marshall additionally explained that he identified someone other than Winters as the driver in a photo array. With respect to that photo array, he indicated that he was 60 percent certain. Marshall further explained that he was more focused on the gun and that, unlike Capp whom he knew, he did not know Winters or the front-seat passenger.

{¶11} The state additionally offered two witnesses — Marshall's father and Tabitha Pierce — both of whom were present at the scene and specifically testified that they observed the driver of the vehicle shoot Marshall. Pierce, a next-door neighbor of Hayne, further testified that she first observed Hayne outside her house arguing with two males and that both of those males, along with another male, were later present at the

shooting. Specifically, Pierce identified the driver of the red pickup truck and the male in the bed of the truck as being present at the house earlier arguing with Hayne. Pierce additionally testified that the driver, who was also the driver of the truck earlier, shot Marshall. Pierce further testified that the two males were seated in the courtroom.

{¶12} Winters presented a single witness to testify as to his whereabouts on March 18, 2014. Kimberly Bartlett, a bailiff for Judge Pamela Barker at the Cuyahoga County Court of Common Pleas, testified that Winters appeared for a morning pretrial on March 18, 2014. Bartlett further testified that Judge Barker's criminal docket ended that day by 11:30 a.m. Although Bartlett was unaware as to what time Winters left Judge Barker's floor, she stated that Winters was not in their courtroom in the afternoon.

{¶13} The jury ultimately found Winters guilty on all the charges. At sentencing, the trial court merged the two felonious assault counts and imposed an aggregate sentence of 11 years in prison.

{¶14} This appeal follows.

**B. Manifest Weight of the Evidence**

{¶15} In his first assignment of error, Winters argues that his conviction is against the manifest weight of the evidence because it is based solely on unreliable, eyewitness-identification testimony.

{¶16} A challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. *State v. Thompkins*, 78 Ohio St.3d 387, 678 N.E.2d 54 (1997). Because it is a broader review, a reviewing court may determine that a judgment of a trial

court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence. *Id.*, citing *State v. Robinson*, 162 Ohio St. 486, 487, 124 N.E.2d 148 (1955).

{¶17} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as a "thirteenth juror." *Id.* In doing so, it must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶18} Winters contends that the jury lost its way by believing Hayne, who positively identified him as the shooter. Winters argues that Hayne's identification was highly unreliable based on her location at the time of the shooting and the short duration of time that the shooter was visible. He further contends that Hayne misidentified Winters as the shooter because she saw him driving the truck prior to the shooting. We find Winters's argument lacks merit.

{¶19} First, determinations of credibility and weight of the testimony remain within the province of the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d

212 (1967), paragraph one of the syllabus. "'Even where discrepancies exist, eyewitness identification testimony alone is sufficient to support a conviction so long as a reasonable juror could find the eyewitness to be credible.'" *State v. Robinson*, 8th Dist. Cuyahoga No. 100126, 2014-Ohio-1624, ¶ 12, quoting *State v. Johnson*, 8th Dist. Cuyahoga No. 99822, 2014-Ohio-494, ¶ 52; citing *State v. Jordan*, 10th Dist. Franklin No. 04AP-827, 2005-Ohio-3790, ¶ 14. Contrary to Winters's assertion, we disagree that Hayne's identification was "highly unreliable." First, the evidence established that Hayne was well acquainted with Winters, who earlier that day had been at Hayne's house. There is no evidence in the record to support Winters's claim that Hayne "was not in a good position to identify the shooter." The shooting took place in the afternoon in March. Hayne was outside her house, approximately 60 feet away — we can hardly say that such a distance renders an identification "highly unreliable." There was no evidence that Hayne's view was somehow obstructed. Further, Hayne unequivocally identified Winters as the shooter in the photo array presented the day following the shooting and again in court. We cannot say that the jury lost its way in believing Hayne.

{¶20} Further, in attacking the credibility of Hayne, Winters ignores the other evidence offered that corroborated Hayne's testimony. Notably, Winters does not dispute the evidence of him being at Hayne's house earlier and that he was seen driving the red truck. Based on that evidence, Pierce's testimony also established that Winters was the shooter. Pierce specifically testified that the driver of the truck shot Marshall

and that the driver was the same person seen at Hayne's house earlier driving the red truck. Thus, Hayne was not the only person who identified Winters as the shooter.

{¶21} And while Winters attempted to establish an alibi at the time of the shooting, his single witness's testimony only established Winters's whereabouts in the morning on March 18, 2014. Here, the shooting took place in the afternoon, well after the time that Winters's pretrial concluded.

{¶22} This is not the exceptional case where the evidence weighs against the conviction.

{¶23} The first assignment of error is overruled.

### C.   Ineffective Assistance of Counsel

{¶24} In his second, third, and fourth assignments of error, Winters argues that he was denied effective assistance of counsel because his trial counsel (1) failed to present expert testimony on the unreliability of eyewitness identification, (2) failed to request a *Telfaire* jury instruction, and (3) failed to request a castle doctrine jury instruction. We disagree.

{¶25} To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v.*

*Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

**{¶26}** The burden is on appellant to prove ineffectiveness of counsel. *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985). Trial counsel is strongly presumed to have rendered adequate assistance. *Id.*; *Strickland* at 699. "Trial strategy or tactical decisions cannot form the basis for a claim of ineffective counsel." *State v. Foster*, 8th Dist. Cuyahoga No. 93391, 2010-Ohio-3186, ¶ 23, citing *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

    *1. Eyewitness Expert Testimony*

**{¶27}** Winters first argues that his trial counsel was ineffective by failing to present an expert witness as to the unreliability of eyewitness-identification evidence. Relying on the same reasons presented in his first assignment of error attacking the reliability of Hayne's identification, as well as the fact that Marshall initially identified someone else as the shooter, Winters argues that the conflicting evidence demonstrates the need for an expert witness. He specifically states that the "prejudice is clear because the identification testimony in the instant case was conflicting." We find Winters's argument, however, misplaced.

**{¶28}** Following Ohio Supreme Court precedent, this court has held that the failure to call an expert in eyewitness identification and instead rely on cross-examination does not constitute ineffective assistance of counsel. *State v. Witherspoon*, 8th Dist. Cuyahoga No. 94475, 2011-Ohio-704, ¶ 40; *State v. Hayes*, 8th Dist. Cuyahoga No.

93785, 2010-Ohio-5234, ¶ 32; citing *State v. Nichols*, 66 Ohio St.3d 431, 436, 613 N.E.2d 225 (1993). "In many criminal cases, such a decision by trial counsel is unquestionably tactical because such an expert might uncover evidence that further inculpates the defendant." *State v. Glover*, 12th Dist. Clermont No. CA2001-12-102, 2002-Ohio-6392, ¶ 25, citing *State v. Walker*, 3d Dist. Seneca No. 13-2000-26, 2001-Ohio-2119.

{¶29} Here, Winters's primary defense at trial was that the state had prosecuted the wrong person, relying heavily on Marshall's initial identification wherein Marshall selected another person as the shooter in the photo array. Trial counsel cross-examined Marshall, emphasizing his photo array identification of another person, which was made close in time to the shooting. Defense counsel further cross-examined Hayne, attacking the credibility of her identification on the basis that she could not recall what Winters was wearing at the time of the shooting. Given that Hayne knew Winters and Marshall did not, an expert may have undermined the defense's theory and simply bolstered Hayne's testimony.

{¶30} Moreover, as recognized by Ohio courts, resolving this issue in Winters's favor "'would be purely speculative as nothing in the record indicates what kind of testimony an eyewitness identification expert could have provided.'" *State v. Andrews*, 12th Dist. Butler No. CA2009-02-052, 2010-Ohio-108, ¶ 37, quoting *State v. Madrigal*, 87 Ohio St.3d 378, 390, 721 N.E.2d 52 (2000).

{¶31} Winters's trial counsel's decision to rely on cross-examination rather than direct testimony of an expert witness was clearly a tactical decision and does not

constitute ineffective assistance of counsel.  *See State v. Day*, 8th Dist. Cuyahoga No. 79368, 2002-Ohio-669 (failure to call "an expert in eyewitness identification was well within the standard of reasonable trial tactics" and did not amount to ineffective assistance of counsel).

{¶32} The second assignment of error is overruled.

2.  *Telfaire* Instruction

{¶33} Winters next argues that his trial counsel was deficient in failing to request the eyewitness instruction set forth in *United States v. Telfaire,* 469 F.2d 552 (D.C.Circ.1972), because identification was the central issue in the case.   According to Winters, the identification testimony offered was conflicting and unreliable and therefore the absence of a *Telfaire* instruction on eyewitness testimony was prejudicial.   We disagree.

{¶34} As this court has previously explained, the *Telfaire* instruction

> "instructs the jury to consider, inter alia, 'the capacity and opportunity of the witness to observe the defendant; the identification being or not being the product of the witness's own recollection, given the strength of the identification and the circumstances under which it was made; the inconsistent identifications that may have been made by the witness; and the general credibility of the witness.'"

*Witherspoon*, 8th Dist. Cuyahoga No. 94475, 2011-Ohio-704, at ¶ 23, citing *State v. Guster*, 66 Ohio St.2d 266, 268, 421 N.E.2d 157 (1981), fn. 1.

{¶35} Although the Ohio Supreme Court has approved the substance of the *Telfaire* instruction, it did not mandate the use of a special instruction regarding

eyewitness identification, recognizing that the decision to give such an instruction was within the sound discretion of the trial court. *Guster* at syllabus.

{¶36} Here, the trial court did give a general instruction regarding the credibility of the witnesses, specifically stating:

> Now, in determining the credibility of a particular witness you should consider the interest or bias the witness has in the outcome of the verdict, their appearance, manner, and demeanor while testifying before you. You can consider their candor and frankness or lack thereof. Consider the consistency of the witnesses' testimony with the other known facts in this case. Consider the accuracy of their memory or inaccuracy, their intelligence or lack thereof, the reasonable or unreasonableness of their testimony. Consider the opportunity the witness had to see, hear or know the truth of the facts and circumstances concerning the things which they have testified to; and you may consider any other facts and circumstances surrounding the testimony which in your judgment would add or detract from the credibility and weight of that particular witness.

{¶37} Contrary to Winters's assertion, we do not agree that the eyewitness testimony was "highly unreliable" or confusing, warranting a special instruction. While Marshall identified another person in the photo array, he indicated at that time that he was not positive of the identification. He further explained at trial that, aside from being nervous, he was focused on the gun and not the shooter's face. Marshall also had never

met Winters prior to the shooting. Conversely, Hayne knew Winters and positively identified him as the shooter. Hayne's identification was further corroborated by Pierce, who also witnessed the events. Based on the facts of this case, we find no fault in Winters's trial counsel's decision not to seek a *Telfaire* instruction because the jury instruction as given adequately informed the jury how to evaluate witness credibility. *See, e.g.*, *Witherspoon*, 8th Dist. Cuyahoga No. 94475, 2011-Ohio-704, ¶ 26; *State v. Collins*, 4th Dist. Pickaway No. 13CA27, 2014-Ohio-4224, ¶ 43.

**{¶38}** Moreover, Winters fails to demonstrate a reasonable probability that the outcome of the proceedings would have been different if the special instruction was given. Accordingly, we cannot find that Winters's trial counsel was ineffective in failing to request the special instruction.

**{¶39}** The third assignment of error is overruled.

*3. Castle Doctrine Instruction*

**{¶40}** In his fourth assignment of error, Winters argues that his trial counsel was ineffective in failing to request a castle doctrine jury instruction. But the castle doctrine — an exception to the duty to retreat when using deadly force — is only applicable when a defendant maintains that he acted in self-defense. *See* R.C. 2901.09(B). Winters's defense at trial centered on him not committing the act and the state prosecuting the wrong person. Thus, trial counsel appropriately refrained from requesting a jury instruction that would have contradicted Winters's defense. Notably, Winters does not attack his trial counsel's decision not to pursue a self-defense theory, which is usually

treated as a tactical decision. Here, Winters's trial counsel strategically chose to pursue a defense of mistaken identity as opposed to self-defense. And based on the evidence presented at trial, that decision was sound and will not be second-guessed on appeal.

{¶41} The fourth assignment of error is overruled.

### D. Court Costs

{¶42} In his final assignment of error, Winters argues, and the state agrees, that the trial court erred in imposing court costs in the journal entry after the court agreed not to do so at the sentencing hearing. We agree. Because the trial court already considered this issue and agreed not to impose court costs, we remand to the trial court for the limited purpose of issuing a nunc pro tunc journal entry that comports with its pronouncement as to costs that was made in open court. *See State v. Pipkins*, 8th Dist. Cuyahoga No. 101624, 2015-Ohio-1823, ¶ 29 (remanding for trial court to issue a nunc pro tunc correction of sentencing entry to reflect the waiver of court costs, consistent with the pronouncement made at sentencing hearing).

{¶43} The final assignment of error is sustained.

{¶44} Judgment affirmed and case remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having

been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_

MARY J. BOYLE, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
SEAN          C.          GALLAGHER,          J.,          CONCUR