[Cite as *State v. McCann*, 2025-Ohio-966.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT**
**COUNTY OF CUYAHOGA**

STATE OF OHIO,                              :

    Plaintiff-Appellee,            :

                                    No. 113982

    v.                                       :

DAVID D. MCCANN,                          :

    Defendant-Appellant.       :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 20, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-657492-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Adrienne E. Linnick and Michael R. Wajda, Assistant Prosecuting Attorneys, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and Robert B. McCaleb, Assistant Public Defender, *for appellant*.

EMANUELLA D. GROVES, J.:

{¶ 1} In this delayed appeal, defendant-appellant, David D. McCann ("McCann"), appeals his convictions for rape, gross sexual imposition, and kidnapping following a jury trial in May 2023. McCann claims that his trial counsel

rendered ineffective assistance and the trial court erred in imposing consecutive sentences. Upon review, we affirm.

## I. Facts and Procedural History

{¶ 2} In November 2021, McCann and a codefendant were indicted in a 12-count indictment for offenses that occurred between January 2018 and September 2019 against child-victim, I.Y. (d.o.b. June 10, 2004). Counts 1 and 2 charged McCann with rape, first-degree felonies. Counts 3 and 4 charged him with attempted rape, second-degree felonies. Counts 5 through 8 charged McCann with gross sexual imposition, fourth-degree felonies. Count 9 charged him with kidnapping, a first-degree felony, and included a sexual-motivation specification. Counts 10-12 charged McCann's codefendant with endangering children.

{¶ 3} In November 2022, the State filed a notice of intent to use evidence of McCann's prior acts pursuant to Evid.R. 404(B). The State argued that McCann sexually assaulted I.Y. in 2014, resulting in a conviction, and that his prior grooming of I.Y. provided an opportunity for him to assault her again. The State asserted that this "other acts evidence" was offered for the legitimate purposes of proving motive, plan, access, opportunity, and lack of accident or mistake. After entering into a plea agreement in January 2023 and subsequently withdrawing his guilty pleas in March 2023, McCann elected to proceed to a jury trial. The trial was set for May 8, 2023.

{¶ 4} On the first day of trial, McCann filed a motion in limine seeking to preclude any mention or introduction of evidence regarding the "other acts evidence" contemplated in the State's November 2022 notice. The court held the

motion in abeyance and heard the parties' arguments the following day. The defense argued that "prejudice overwhelms the probative value [in a rape case] more than any case, more than a murder case, more than a federal case." (Tr. 261.)

{¶ 5} After discussing case law on the issue, the trial court advised that witnesses were permitted to testify about the history of McCann's interactions with I.Y. but were prohibited from discussing his conviction arising from that behavior. The trial court noted the defense's objection for the record and advised that trial counsel could object at any point during testimony. McCann's trial counsel advised: "Well, I don't want to just keep banging away at that, but I'll say objection. I won't bring it up. I will just, for the record, it will be continuation of that argument that I just put on the record. . . . I'm not going to be an idiot here and object just on every time. I'll object when it's egregious." *Id.* at 267-268. The trial court and McCann's trial counsel also discussed how a curative jury instruction draws attention to the issue and "causes . . . questions that you can't answer . . . ." *Id.* at 268.

{¶ 6} During the State's case-in-chief, testimony was offered by I.Y., mother and sister, and investigators in various capacities from Cuyahoga County Child and Family Services ("CCDCFS"), the Cleveland Police Department, and Rainbow Babies and Children's Hospital. The following evidence was adduced. McCann and I.Y.'s mother had an off and on relationship beginning in 2014 and ending in 2019. I.Y. testified that she first met McCann in 2014, when she was ten years old, in the fifth grade, and living with her mother. I.Y. went to McCann's house a few times a week with her mother and two older sisters. I.Y. described her relationship with McCann

as "friendly, cordial, just like acquaintances." (Tr. 467.) After three months, their visits became longer and more frequent; I.Y. and her sisters would visit McCann daily and sometimes without I.Y.'s mother, who would be gone once or twice a week for "maybe four to six hours, sometimes all night." *Id.* at 470.

{¶ 7} I.Y. testified that their relationship changed a few weeks later: "[McCann] became more friendly towards me and in a more personal manner versus my sisters . . . . [H]e gave me more individual attention, more gifts, more . . . stuff like that." *Id.* at 471. I.Y. explained that her interactions with McCann then "changed into a more of a sexual manner" and "turned into sexual comments and touches [over clothing] and things like that." *Id.* at 473. I.Y. testified that these interactions were happening a couple of times per week in McCann's house when "he could find [her] alone," I.Y.'s mother and oldest sister were away, and I.Y.'s other sister ("older sister") was in another room. *Id.* at 475. I.Y. did not tell anyone at the time because she did not want to get into trouble.

{¶ 8} After four months, McCann's interactions with I.Y. "escalated" to touching underneath clothing "[a]ny place in [his] house that I happen to be . . . alone." *Id.* at 477. Again, I.Y. explained that her older sister was in another room in McCann's home when these interactions occurred. These interactions lasted until a report was made by I.Y.'s school in 2015, after a teacher found a note in I.Y.'s journal describing her thoughts and feelings about "[w]hat McCann would do with [her]." *Id.* at 480. As a result of the report, I.Y. spoke to a social worker, police officer, and

her mother; began living with her grandmother; and did not see or interact with McCann.

{¶ 9} After a year, I.Y. resumed living with her mother. I.Y. did not see McCann again until about another year later: "It was just like nothing ever happened. General, like, friendly conversation . . . at his house . . . [o]nce or twice a week, if that." *Id.* at 484. About a month later, visits became more frequent and interactions began "escalating" with "more of the personal individual attention, the gifts increased and all that stuff." *Id.* 485-486. After four to six months, McCann's interactions with I.Y. changed again with "more of the sexual talks, the touching." *Id.* at 487. I.Y. believed she was 14 years old at the time.

{¶ 10} According to I.Y., after another four to six months, "it escalated to more intimate touching, like inside of the clothes and also sex and oral sex." *Id.* at 488. This occurred "maybe a couple times a month" for "a good six months" while I.Y., her mother, and sisters were living with McCann in 2018. *Id.* at 491. McCann also made sexual comments to I.Y. "almost daily." *Id.* at 497. I.Y. described specific sexual interactions with McCann and recalled thinking, "I don't want to do this," but did not say anything because she did not want to get into trouble. *Id.* at 496. I.Y. further testified that she felt like she should not leave amidst sexual encounters with McCann because he told her "something along the lines of if not me, it would be my sister . . . instead." *Id.* at 497. I.Y. explained that she did not want to leave and chose not to tell anyone because she did not want the same things to happen to her sisters.

*Id.* at 499, 506. McCann's interactions with I.Y. stopped after I.Y.'s mother filed a restraining order against him in the beginning of 2019 and they left his home.

{¶ 11} Shortly before moving out of McCann's home, I.Y. told her older sister about the sexual abuse she experienced at the hands of McCann. I.Y. explained that her mother "called a family meeting" to confront I.Y. and McCann about text messages she found between I.Y. and one of her friends about "the entire situation." *Id.* at 499. I.Y. and McCann denied the allegation and the meeting was adjourned. I.Y. explained that "[my older sister] pulled me to the side a little after that and asked me was it really true or was I lying or not or covering for him. . . . I told her everything, the entire truth." *Id.* at 501. I.Y. testified that she was never alone with McCann again: "After I told her, she kept me with her at all times when she was staying with him. She never like, left me alone with him or have given him any chance to be alone with me for any time." *Id.* at 501-502. After telling her older sister and leaving McCann's house, I.Y. spoke to two caseworkers about her sexual abuse and was taken to the hospital for a checkup.

{¶ 12} I.Y.'s older sister further recounted McCann's history with their family and her conversation with I.Y. regarding I.Y.'s sexual abuse. I.Y.'s older sister also offered testimony about conversations she had with McCann about his past interactions with her and I.Y and "things [they] used to do when [they] were younger." *Id.* at 558. This line of questioning resulted in multiple objections from the defense and a discussion between the trial court and counsel at sidebar. I.Y.'s older sister testified:

For example, I know when we were younger, around the first time that we had stayed with [McCann], you know, my mom she was always big on like religion and everything like that. She never wanted, like, God looking at us the wrong way, so she always had us wearing baggie clothes around the house or just anywhere.

We used to go to sleep in white t-shirts and like oversized pants and stuff like that. [McCann] told me that — he told me that he would — when we were younger, we used to play all the time with him, like, we were always friendly with each other, like, as a kid, we didn't think nothing of it. He would . . . have water fights with us, . . . we would have, like, buckets of water . . . and . . . throw them on each other . . . around the house and stuff.

And you know how it is when you have a white shirt on and it gets wet and it clenches to your body, you can kind of see your frame and everything like that. He later told me that . . . he was having water fights with us for that reason, to see our frame through the white shirts.

. . .

He used to wrestle with us. Like, he would . . . tickle us and . . . hold us down on the bed. I realized . . . later on, . . . the way that he was doing it was inappropriate. He would, like, lay on top of us to tickle us, so he's kind of like pushing his self on our body as we're, like, laying up, you know, like facing upward.

. . .

He kind of just was saying that the way that he played with us was for a reason basically. . . . To be able to, like, feel on us or look at us a certain way.

*Id.* at 559-561.

{¶ 13} Finally, testimony was offered from the following witnesses regarding their investigation of McCann's sexual abuse of I.Y.:

(1) an intake investigative worker from CCDCFS,

(2) a child protection specialist from CCDCFS's Sex Abuse Unit,

(3) a responding officer from the Cleveland Police Department,

(4) a detective from the Cleveland Police Department's Sex Crimes and Child Abuse Unit, and

(5) a pediatric and family nurse practitioner and sexual assault nurse examiner from Rainbow Babies and Children's Hospital's child advocacy and protection team.

After the admission of exhibits, the State rested, the defense moved for acquittal under Crim.R. 29, and the trial court granted the defense's motion as to Counts 3 and 4 (attempted rape). The defense immediately rested, and the trial court overruled the defense's renewed Crim.R. 29 motion. Ultimately, the jury found McCann guilty of all remaining counts.

{¶ 14} On May 24, 2023, McCann's sentencing hearing was held. The trial court reviewed McCann's presentence-investigation report and heard from the parties. The trial court reviewed statutory sentencing guidelines and made the following findings:

> In looking at [R.C] 2929.12(B), whether the offender's conduct is more serious, I do find that the injury was exacerbated by the victim's physical or mental condition or age in this matter, the victim in this case, with these charges being the age of 14 and 15. I do find that she suffered serious physical and psychological harm as a result of the conduct of Mr. McCann.
>
> I do find under that section that the — that Mr. McCann's relationship with the victim, him being in loco parentis, oftentimes with those girls left at his home, without their mother, that relationship facilitated the offense.
>
> Although this is not a domestic violence by statute, I do find that the offender, Mr. McCann, is a parent or other custodian, and that the victim was a household member at times within his own home.

Whether his conduct is less serious, under [R.C.] 2929.12(C), I do not find that the victim induced or facilitated the offense.

I do not find that Mr. McCann acted under any strong provocation. I do not find that he did not cause or expect to cause physical harm to her.

I do not find that there are substantial grounds to mitigate his conduct even if they constitute an offense.

Whether recidivism is more likely under R.C. 2929.12(D), the offender, Mr. McCann, does have a history of criminal convictions. Specifically, the conviction that the Court is most concerned about is his conviction in . . . 2016, in Case Number 593821.

The case was originally charged as rape, gross sexual imposition, kidnapping with a sexual motivation specification, and gross sexual imposition.

Mr. McCann pled guilty to a reduced charge of endangering children, a felony of the second degree. And the Prosecutor's notes, the reduction was in large part due to the mother's lack of cooperation in bringing the child to court to participate in the prosecution of that case.

In that case, the victim was the same victim as was in this case. He also has a history of a domestic violence charge from 1997, as well.

So under recidivism is more likely, I do find that the history of criminal convictions or juvenile delinquency, a history of criminal convictions exists.

And those other factors I can't make a finding of.

With regard to whether or not Mr. McCann shows genuine remorse, I will take into consideration the fact . . . that [trial counsel] said that [he] had advised [McCann] not to make a statement.

So it's hard for me to give that weight, or to give it any weight, or no weight, at all.

With regard to whether recidivism is less likely under [R.C.] 2929.12(E), I don't have — it doesn't look like there's a history of juvenile adjudications. He does have a prior adult record.

I suppose you could say that he led a law-abiding life for a significant number of years.

This one point, offense was committed under circumstances unlikely to reoccur. I do not find that that exists. I find that as soon as Mr. McCann had access to these girls, especially to the victim, that, in fact, the offense did reoccur.

. . . The law generally presumes a concurrent sentence. Under [R.C.] 2929.41(A), with the discretion — with the Court given discretion to impose a consecutive sentence, if necessary, to protect and/or punish, and it should not be disproportionate.

And I must make the following — at least one of the following findings:

I can't make the finding that the crimes were committed while awaiting trial, sentencing or under sanction or under Post Release Control. That doesn't exist.

I do find under this section, [R.C.] 2929.14(C)(4), that, in fact, the harm is so great or unusual that a single prison term does not adequately reflect the seriousness of the conduct.

And I do find that his criminal history, specifically the case where this was the same victim reduced to a child endangering, where she was the victim in that child endangering based on her mother's lack of participation, starting out as a sex offense, that that, in fact, does dictate consecutive terms are needed to protect the public.

So I am going to impose a consecutive sentence.

*Id.* at 819-823. The trial court sentenced McCann as follows:

The court imposes a prison sentence at the Lorain Correctional Institution of 18 years. Count 1: aggregate minimum sentence 10 years to aggregate maximum sentence 15 years. Count 2: 8 years. Count 5: 4 years. Count 6: 4 years. Count 7: 4 years. Count 8: 4 years. Count 9: 8 years. Counts 1 and 2 to run consecutive to each other for an aggregate minimum sentence of 18 years to aggregate maximum

sentence of 23 years.  Counts 5, 6, 7, 8, and 9 to run concurrent to each other and concurrent to the sentence in Counts 1 and 2.

The court imposes prison terms consecutively finding that consecutive service of the prison term is necessary to protect the public from future crime or to punish defendant; that the consecutive sentences are not disproportionate to the seriousness of defendant's conduct and to the danger defendant poses to the public; and that, at least two of the multiple offenses were committed in this case as part of one or more courses of conduct, and the harm caused by said multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of defendant's conduct, or defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by defendant.

(Cleaned up.)  (Sentencing Entry, 05/25/23).

{¶ 15} In May 2024, McCann filed a notice of appeal of the May 25, 2023 sentencing entry along with a motion for leave to file a delayed appeal.[1]   This court granted McCann's motion.  McCann raises two assignments of error for review in his delayed appeal.

### Assignment of Error No. 1

McCann's trial counsel rendered constitutionally ineffective assistance when he permitted a non-victim witness to testify at length, without objection, about prior alleged bad acts claimed to have been done to her by McCann.

### Assignment of Error No. 2

The trial court erred in imposing consecutive sentences on Counts 1 and 2.

---

[1] Pursuant to App.R. 5(A), an appeal from a criminal proceeding may be taken by a defendant after the expiration of the 30-day notice-of-appeal filing deadline with leave of the appellate court.  A delayed appeal is a direct appeal:  "Once granted, a delayed appeal proceeds as any timely appeal would proceed, and the assertion of error is virtually the same as it would have been but for the delayed filing."  *State v. Dudas*, 2024-Ohio-775, ¶ 11, 15, quoting *State v. Silsby*, 2008-Ohio-3834, ¶ 14.

## II. Law and Analysis

### A. Ineffective Assistance of Counsel

{¶ 16} In his first assignment of error, McCann claims that he received ineffective assistance of trial counsel.

{¶ 17} "'A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *State v. Powell*, 2019-Ohio-4345, ¶ 69 (8th Dist.), quoting *State v. Pawlak*, 2014-Ohio-2175, ¶ 69 (8th Dist.). As a result, "great deference" is afforded to trial counsel's performance and tactical decisions and trial strategies, even if "debatable," do not generally rise to the level of ineffective assistance. *State v. Harris*, 2022-Ohio-4630, ¶ 49-50 (8th Dist.), citing *State v. Scarton*, 2020-Ohio-2952, ¶ 89-90 (8th Dist.). Indeed, "[r]eviewing courts 'will ordinarily refrain from second-guessing strategic decisions counsel ma[d]e at trial,' even where trial counsel's strategy was 'questionable' and even where appellate counsel argues that he or she would have defended against the charges differently." *Scarton* at ¶ 90, quoting *State v. Myers*, 2002-Ohio-6658, ¶ 152, and citing *State v. Mason*, 82 Ohio St.3d 144, 169 (1998), and *State v. Quinones*, 2014-Ohio-5544, ¶ 25 (8th Dist.).

{¶ 18} Because it is presumed that a licensed attorney is competent, a defendant claiming ineffective assistance bears the burden of proof. *Ohio v. Redmond*, 2022-Ohio-3734, ¶ 41 (8th Dist.), citing *State v. Black*, 2019-Ohio-4977, ¶ 35 (8th Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). To establish an ineffective-assistance-of-counsel claim, a defendant must demonstrate that (1) his

or her "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance, the first prong of the *Strickland* test, requires a showing "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Prejudice, the second prong of the *Strickland* test, requires "a reasonable probability that but for counsel's errors, the proceeding's result would have been different." *State v. Winters*, 2016-Ohio-928, ¶ 25 (8th Dist.), citing *Strickland* at 687-688, and *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus. The failure to prove either prong of *Strickland*'s two-part test makes it unnecessary for a reviewing court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000), citing *Strickland* at 697.

{¶ 19} McCann claims that his trial counsel's failure to object to I.Y.'s sister's "highly objectionable" testimony was unreasonable. McCann claims that this "other acts" evidence tended to show only that he engaged in inappropriate behavior with I.Y. and her sisters and was elicited for the sole purpose of inflaming the jury's passion against him. McCann argues that he was prejudiced by ineffective assistance of counsel because I.Y.'s sister's testimony "served primarily, if not entirely, to suggest to the jurors that Mr. McCann was basically just a creepy guy — the sort of person who might well have done what was alleged . . . ."

{¶ 20} Our review of the record reveals that McCann's trial counsel filed a motion in limine seeking to preclude the admission of such "other acts" evidence. After the trial court ruled that evidence was permitted of the history of McCann's

interactions with I.Y., trial counsel noted his continuing objection, advised that he would only "object when it's egregious," and declined a curative jury instruction. Trial counsel explained that he did not want to "keep banging away at that" because it could have the counterproductive effect of highlighting issues and raising unanswerable questions. Thus, trial counsel's purported failure to object to I.Y.'s testimony amounts to a trial strategy that, even if debatable, does not rise to the level of ineffective assistance. *See, e.g., State v. Jackson*, 2006-Ohio-174 (8th Dist.) (holding a failure to object, in and of itself, does not rise to the level of ineffective assistance of counsel because it can be a legitimate tactical decision and finding that defense counsel's decision not to object to prejudicial testimony constituted trial strategy, falling in the realm of reasonable professional assistance).

{¶ 21} Nonetheless, McCann fails to establish that trial counsel's alleged deficient performance prejudiced the defense, as required by the second prong. The record reveals that the State presented numerous witnesses that developed the story of McCann's sexual abuse of I.Y., ranging from members of I.Y.'s family to several investigators. Most notably, I.Y. offered compelling testimony about her relationship with McCann and the progression of their interactions. While I.Y.'s older sister's testimony may have corroborated and added to I.Y.'s testimony the State's case against McCann's did not hinge upon it. McCann seemingly agrees, stating in his appellate brief that "the objectionable portion of I.[Y.]'s sister's testimony worked essentially to bolster I.[Y.]'s own testimony." Thus, McCann has not established that there is a reasonable probability that but for trial counsel's

failure to object to I.Y.'s older sister's testimony, the proceeding's result would have been different. Therefore, we cannot say that McCann was prejudiced by trial counsel's alleged failure to object to I.Y.'s sister's testimony, regardless of whether that conduct amounted to deficient performance or mere trial tactics.

{¶ 22} Accordingly, we find that McCann fails to prove either prong of the *Strickland* test and overrule his first assignment of error.

### B. Consecutive Sentences

{¶ 23} In his second assignment of error, McCann argues that the trial court erred in imposing consecutive sentences in Counts 1 and 2. McCann argues that the trial court's findings during his sentencing "are not enough" to satisfy statutory requirements.

{¶ 24} R.C. 2929.14(C)(4) provides that in order to impose consecutive sentences, the trial court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) such sentences would not be disproportionate to the seriousness of the conduct and to the danger the offender poses to the public; and (3) one of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to Section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

Moreover, R.C. 2929.14(C)(4) and Crim.R. 32(A)(4) require the trial court to make statutory findings at the sentencing hearing prior to imposing consecutive sentences: "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *State v. Bonnell*, 2014-Ohio-3177, ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326 (1999).

{¶ 25} On appeal, a reviewing court must be able to ascertain evidence supporting the trial court's findings from the record before it. *State v. Wells*, 2021-Ohio-2585, ¶ 71, citing *Bonnell* at ¶ 29. "A trial court is not, however, required to state its reasons to support its findings, nor is it required to [recite verbatim] the statutory language, 'provided that the necessary findings can be found in the record and are incorporated in the sentencing entry.'" *State v. Sheline*, 2019-Ohio-528, ¶ 176 (8th Dist.), quoting *Bonnell* at ¶ 37.

{¶ 26} Here, McCann claims that the trial court never made findings regarding 1) the necessity of protecting the public or punishing the offender, 2) the proportionality of the sentence to his conduct, and 3) whether the offenses were committed as part of the one or more courses of conduct. McCann acknowledges that the trial court found that his criminal history dictated that consecutive terms were necessary to protect the public, satisfying the third prong. However, McCann argues that the trial court's reasoning was flawed and/or unsupported by the record

because he "only committed the crime to which he pleaded guilty to, namely child endangering."

{¶ 27} Our review of the record reveals that the trial court made several findings on the record during McCann's sentencing hearing after reviewing his presentence-investigation report and hearing from the parties. Contrary to McCann's assertions, the trial court specifically found that "consecutive terms are needed to protect the public." The trial court also contemplated the seriousness of McCann's conduct and the harm that resulted, finding that I.Y. suffered serious physical and psychological harm and that these injuries were exacerbated by her young age. The trial court further found that McCann's relationship with I.Y. facilitated the offenses. In its discussion of McCann's criminal history, the trial court noted that McCann was previously charged with rape, gross sexual imposition, and kidnapping with a sexual motivation specification in a prior case involving the same victim. The trial court further noted that the charges were reduced to endangering children in large part due to I.Y.'s mother's lack of cooperation. The trial court found that the offenses were committed under circumstances that were likely to reoccur, noting that "as soon as Mr. McCann had access to these girls, especially the victim, that, in fact, the offense did reoccur." Moreover, as noted in McCann's appellate brief, all requisite findings were included in trial court's "boilerplate" sentencing entry, which mirrored the language of R.C. 2929.14(C)(4).

{¶ 28} Based on the foregoing, we find that the trial court engaged in the proper analysis, considered the required statutory criteria, and made the necessary

findings before imposing consecutive sentences. Moreover, the record clearly supports the trial court's findings that consecutive sentences were appropriate in McCann's case. Accordingly, McCann's second assignment of error is overruled.

{¶ 29} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

MICHELLE J. SHEEHAN, P.J., and
MARY J. BOYLE, J., CONCUR