[Cite as *State v. Perkins*, 2025-Ohio-1661.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                    :

    Plaintiff-Appellee,          :

                                  No. 114430

    v.                              :

ALONZO PERKINS,                  :

    Defendant-Appellant.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 8, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-692167-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Courtney Kirven, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Robert McCaleb, Assistant Public Defender, *for appellant.*

DEENA R. CALABRESE, J.:

{¶ 1} Following a bench trial held August 20-22, 2024, the trial court found defendant-appellant Alonzo Perkins guilty of all charges related to a shooting that occurred May 18, 2024. Appellant raises a single assignment of error for our review:

Trial counsel was constitutionally ineffective for failing to argue that Mr. Perkins' conduct amounted, at most, to aggravated rather than felonious assault.

Finding no merit to the appeal, we affirm.

## I. Factual and Procedural History

{¶ 2} On May 22, 2024, the Cuyahoga County Grand Jury returned an indictment charging appellant with two counts of felonious assault, one under R.C. 2903.11(A)(2) and the second under R.C. 2903.11(A)(1), with one- and three-year firearm specifications attached to each count under R.C. 2941.141(A) and 2941.145(A), as well as R.C. 2941.1417(A) weapons forfeiture specifications. The charges related to events that began at a Family Dollar store and culminated in appellant shooting the victim in the ankle a short distance from the store. Appellant waived his right to trial by jury, and the case proceeded to trial before the bench.

{¶ 3} Trial testimony indicated that on the date of the incident, May 18, 2024, appellant was employed by a Family Dollar store in Cleveland as a greeter. A Family Dollar district manager, Barb Jackson, testified that appellant's role was primarily to greet customers and to notify the store manager of suspicious activity:

> As a door greeter, he's responsible for greeting the customer coming into the door and to just monitor the perimeter of the store inside the store, inside the building, walk the aisles and just make sure and kind of detour if there's any theft situations. In the event that there is a theft situation, he's to alert the store manager or a manager on duty.

(Tr. 115.) Jackson testified that while a greeter would be authorized to confront suspected shoplifters in the store, they "should get the manager, the store team

manager involved," and that any authority to confront customers did not continue outside the store. (Tr. 115-116.)

{¶ 4} On May 18, 2024, the victim and his fiancée, with their four-month-old child in a stroller, entered the store to do some shopping. As they left the store, appellant confronted the victim, demanding to see a store receipt. The victim testified that he could not find the receipt and that appellant followed him and his family outside. The victim testified that appellant began "to grab onto my son's stroller" and would not let go. (Tr. 31.) According to the victim, appellant "was completely unresponsive to anything I said," even after he "asked him please don't grab onto my son's stroller like that." (Tr. 31.) The victim testified that the baby began crying and that he was worried the stroller might tip over. According to his testimony, he "reacted without thinking" and punched appellant in the face. (Tr. 32.) Seeing no immediate reaction from appellant, the victim left with his family and proceeded to walk towards their home.

{¶ 5} The confrontation, however, was not over. Appellant got into his car and caught up with the family a few minutes later. Appellant stopped his car in the street, drew a gun on the victim, and ordered him to the ground. The victim did not comply with that demand, but testified he held his hands up. He denied walking towards appellant, indicating he "moved away . . . in the opposite direction." (Tr. 49.) After some verbal exchanges, which included the victim telling appellant "I don't believe you're a police officer," "please put the gun away," and "I have a family," appellant fired a single round, striking the victim in the ankle. The victim fell to the

ground. He testified that appellant stood over him and said: "You thought I was going to let you get away with this? You thought I was going to let you punch me in the face?" (Tr. 40.)

{¶ 6} The victim testified that appellant began "to pace back and forth" while "still pointing the gun" at him and telling him not to move. (Tr. 40.) Appellant himself called the police. According to the victim, appellant said on the phone, "I have him. I got him right here." (Tr. 46.) An off-duty police officer intervened, and uniformed police ultimately responded. The victim testified to having two ankle surgeries after the injury, as well as continuing medical treatment. (Tr. 47-48.)

{¶ 7} The victim's fiancée testified that the confrontation in the street occurred about two minutes after the encounter at the store. She testified that the victim did not move towards appellant while appellant held him at gunpoint. Instead, the victim "[m]ight have took a step or two back," but appellant was "inching forward." (Tr. 93.)

{¶ 8} The trial court heard further testimony from a Cleveland police officer and a Cleveland detective, as well as Jennifer Gatens, an eyewitness who called 911. It also received several exhibits without objection, including video footage, scene photographs, a recording of the 911 call, and police bodycam footage.

{¶ 9} The trial court found appellant guilty of all charges on the underlying indictment. It entered judgment in accordance with the verdicts and sentenced appellant to an aggregate, non-life indefinite term of 12-15 years' imprisonment, which includes the mandatory consecutive sentences on the firearm specifications.

## II. Analysis

{¶ 10} To establish a claim of ineffective assistance of counsel, appellant "'must demonstrate that (1) his counsel was deficient in some aspect of his representation and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.'" *State v. Thompson*, 2024-Ohio-5910, ¶ 5 (8th Dist.), quoting *In re S.A.*, 2019-Ohio-4782, ¶ 46 (8th Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694 (1984). As this court stated in *Thompson*, "'[T]he failure to make a showing of *either* deficient performance or prejudice defeats a claim of ineffective assistance of counsel.'" (Emphasis added.) *Thompson* at ¶ 5, quoting *In re S.A.* at ¶ 46. *See also State v. Davenport*, 2018-Ohio-2933, ¶ 25 (8th Dist.). To put it even more explicitly, "The failure to prove either prong of *Strickland's* two-part test makes it unnecessary for a reviewing court to consider the other prong." *State v. McCann*, 2025-Ohio-966, ¶ 18 (8th Dist.), citing *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

{¶ 11} "Deficient performance, the first prong of the *Strickland* test, requires a showing 'that counsel's representation fell below an objective standard of reasonableness.'" *McCann* at ¶ 18, quoting *Strickland* at 688. "In Ohio, every properly licensed attorney is presumed to be competent and, therefore, a defendant claiming ineffective assistance of counsel bears the burden of proof." *In re S.A.* at ¶ 47, citing *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). *See also McCann* at ¶ 18. Moreover, "Counsel's tactical decisions or trial strategy cannot form the basis for a

claim of ineffective counsel." *In re S.A.* at ¶ 47, citing *State v. Foster*, 2010-Ohio-3186, ¶ 23 (8th Dist.). *See also State v. Clayton*, 62 Ohio St.2d 45 (1980).

{¶ 12} Reviewing courts "'will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *McCann* at ¶ 17, quoting *State v. Powell*, 2019-Ohio-4345, ¶ 69 (8th Dist.); *see also Strickland* at 689 (A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."). We therefore afford "great deference" to "trial counsel's performance and tactical decisions and trial strategies." *McCann* at ¶ 17. Even "debatable" or "questionable" trial tactics generally "do not constitute ineffective assistance of counsel." *State v. Harris*, 2022-Ohio-4630, ¶ 50 (8th Dist.), citing *State v. Scarton*, 2020-Ohio-2952, ¶ 90 (8th Dist.). Appellate courts therefore "'ordinarily refrain from second-guessing strategic decisions counsel make at trial,' . . . even where appellate counsel argues that he or she would have defended against the charges differently." *Scarton* at ¶ 90, quoting *State v. Myers*, 2002-Ohio-6658, ¶ 152.

{¶ 13} Appellant argues that because his shooting of the victim occurred shortly after the victim punched appellant in the face, defense counsel had a strong argument for a conviction on aggravated assault rather than felonious assault. This court has summarized the elements of R.C. 2903.12(A) aggravated assault as follows:

Aggravated assault requires demonstration on the defendant's part that he knowingly caused serious physical harm to another, or caused or attempted to cause physical harm to another by means of a deadly weapon, either out of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation caused by the victim that was reasonably sufficient to incite the defendant into using deadly force.

*State v. Perez*, 2009-Ohio-959, ¶ 60 (8th Dist.), citing *State v. Deem*, 40 Ohio St.3d 205, 210-211 (1988).

{¶ 14} As this court has previously stated, however, "The decision about which defense or theory to pursue at trial is a matter of trial strategy '"within the exclusive province of defense counsel to make after consultation with his [or her] client."'" *Scarton* at ¶ 99, quoting *State v. Murphy*, 91 Ohio St.3d 516, 524 (2001), quoting *Lewis v. Alexander*, 11 F.3d 1349, 1354 (6th Cir. 1993). In this context, "[d]efense counsel's decision to forego" arguments related to felonies of an inferior degree, such as aggravated assault rather than felonious assault, "may be a strategic maneuver designed to obtain an acquittal, instead of a conviction on an inferior-degree-offense." *Scarton* at ¶ 99. As a result, such decisions "ordinarily constitute matters of trial strategy and do not support a claim of ineffective assistance of counsel." *Id.*, citing *State v. Moore*, 2016-Ohio-8274, ¶ 34 (4th Dist.). *See also Clayton*, 62 Ohio St.2d at 47-49 (no denial of effective assistance of counsel where attorney made tactical choice "to seek acquittal rather than to invite conviction of the lesser offense"), quoting *United States v. Meyers*, 443 F.2d 913, 914 (9th Cir. 1971).

{¶ 15} In *Scarton*, 2020-Ohio-2952 (8th Dist.), this court noted that "[t]hroughout [the] case, defense counsel . . . maintained that [the victim's] death was nothing more than a 'horrible, tragic accident.'" *Scarton* at ¶ 100. This court therefore held that defense counsel's objection to the State's proposed inferior-degree-offense jury instruction was part of counsel's trial strategy in seeking a full acquittal. *Id*. at ¶ 100-101. Here, likewise, the transcript suggests that defense counsel sought acquittal by suggesting the shooting was accidental and that appellant therefore lacked the requisite *mens rea* to support a felonious-assault conviction. In cross-examining the victim, for example, he highlighted appellant's possible disorientation from being punched in the nose and suggested the gun might have gone off as the victim was allegedly trying to take it from appellant. (Tr. 72-74.)

{¶ 16} Furthermore, while opening statements and closing arguments are not evidence, they even more explicitly illuminate counsel's trial strategy. [1] In his opening statement, defense counsel argued that "the weapon went off accidentally and struck [the victim] in the ankle." (Tr. 13.) He said that "[t]here was no intent by [appellant] to shoot this man" and that shooting the victim was "not [appellant's] desire or intent." (Tr. 13-14.) Defense counsel claimed the evidence would show "the injury to [the victim] was by accident." (Tr. 13.) He argued that appellant "was

---

[1] *State v. Virostek*, 2022-Ohio-1397, ¶ 99 (8th Dist.). *See also State v. Jackson*, 2023-Ohio-455, ¶ 45 (8th Dist.); *State v. Weems*, 2013-Ohio-1343, ¶ 18 (8th Dist.).

trying to effectuate a stop" after being assaulted at the store and that "the gun accidentally went off." (Tr. 14.)

{¶ 17} Defense counsel returned to these themes in closing argument. He recounted in detail the victim's punch to appellant's nose outside the store. He then suggested appellant may have been somewhat disoriented, had difficulty seeing, had his adrenaline flowing, and was even "a little delirious" thanks to the punch the victim delivered to his face. (Tr. 167.) While acknowledging that his client shot the victim, he argued that his client's "intentions [were] to keep him there, not to shoot him," and that a shooting "can be completely accidental." (Tr. 167-168.) After summarizing his view of the evidence, defense counsel argued that while the State "want[s] to put intent in [appellant's] head, the facts don't prove intent," and that "it's as logical and as possible that this was an accident." (Tr. 168-169.) He therefore argued that appellant's actions did not "rise to felonious assault." (Tr. 169.) While the trial court ultimately rejected that argument, it acknowledged it as the defense's theory of the case, noting in the concluding sentences of its verdict that it did not believe "that this was an accident," but that it was instead "a revenge shooting." (Tr. 178.)

{¶ 18} In light of this theory of the case, even if "the evidence presented could have supported a request for consideration of aggravated assault[,] . . . '[t]rial counsel could have reasonably concluded that presenting the fact finder with conflicting theories of the case would have been counterproductive.'" *Perez*, 2009-Ohio-959, at ¶ 60 (8th Dist.), quoting *State v. Baker*, 2005-Ohio-45, ¶ 11 (2d Dist.).

The case of *State v. Catlin*, 56 Ohio App.3d 75 (2d Dist. 1990), is instructive in this regard. That case was tried to a jury, and the claim of ineffective assistance of counsel involved, inter alia, the argument that trial counsel should have sought a jury instruction on aggravated assault. The court wrote that where the defendant "has a reasonable hope" of a not guilty verdict, "it is a matter of trial strategy whether to seek to have the jury instructed concerning a lesser offense, or not to seek such an instruction and to hope for an acquittal." *Id.* at 79, citing *Clayton*, 62 Ohio St.2d 45. The *Catlin* Court noted that "[i]t is difficult to persuade a [factfinder] with inconsistent theories of defense[,]" and therefore it could not find "that Catlin's trial attorney was ineffective when he eschewed a theory of defense that would have sought to persuade the jury that Catlin was, at most, guilty of aggravated assault." *Id.*

{¶ 19} Not only does this reasoning hold true in the present case, where defense counsel's theory was that the gun was discharged by accident, but this case "was tried to the bench, not to a jury. The trial court heard all of the evidence. In a bench trial, a presumption arises that a judge considers 'only the relevant, material and competent evidence in arriving at a judgment, unless the contrary affirmatively appears from the record.'" (Cleaned up.) *State v. Buckley*, 1995 Ohio App. LEXIS 5181, *9-10 (8th Dist. Nov. 22, 1995), quoting *State v. Eubank*, 60 Ohio St.2d 183, 187 (1979). In this context, and in light of Crim.R. 31(C), "[a]bsent any indication to the contrary, this court sees no reason to conclude that the trial court did not automatically consider any lesser included offense warranted by the evidence even

if defense counsel did not 'instruct' it as to the lesser included offense." *Buckley* at *10.[2] *See also Williams* at *8-10; *State v. Leibold*, 1993 Ohio App. LEXIS 1419, *6 (8th Dist. Mar. 11, 1993) (though framed as a sufficiently challenge rather than ineffective assistance of counsel, this court noted that Liebold's case "was a trial to the court," and "[t]here is no indication that the trial court as factfinder may not have considered the alleged provocation and decided it wasn't sufficient to operate to reduce the crime from felonious assault to aggravated assault").

{¶ 20} We explored this even further in *Perez*, a bench trial case that explicitly turned on the distinction between felonious assault and aggravated assault, and in which we cited *Catlin*:

> We agree that Perez's trial counsel could have reasonably decided not to request the court to consider aggravated assault in the hope of obtaining a complete acquittal of the two counts of felonious assault charged in the indictment. He may well have believed that the inferior degree offense of aggravated assault conflicted with the theory of self-defense that he presented at trial, or might confuse the trier of fact. *See State v. Catlin*, 56 Ohio App.3d 75, 564 N.E.2d 750. Moreover, in a bench trial it is presumed that the trial court considered the appropriate inferior and lesser-included offenses and defenses. *See State v. Waters*, [2006-Ohio-4895, ¶ 11 (8th Dist.)].

*Perez* at ¶ 61.

---

[2] In his brief, appellant highlighted the fact that aggravated assault is not a lesser-included offense of felonious assault, but instead an offense of an inferior degree. Moreover, at oral argument, appellant's counsel suggested the referenced presumption extends only to lesser-included offenses, and not offenses of an inferior degree. *Perez*, however, suggests there is no meaningful distinction in this context. *See Perez* at ¶ 61; *see also In re Z.C.*, 2006-Ohio-1787, ¶ 30 (12th Dist.) ("This court has . . . recognized that, 'absent any indication to the contrary, we see no reason why the court in a bench trial would not automatically consider any lesser included offense or inferior degree offense warranted by the evidence.'"), quoting *State v. Williams*, 1993 Ohio App. LEXIS 2749, *9 (12th Dist. June 1, 1993).

{¶ 21} Having thoroughly reviewed the trial court record in light of applicable legal standards, we cannot conclude that defense counsel's failure to request that the trial court consider the lesser offense of aggravated assault constituted constitutionally ineffective assistance of counsel. The record is consistent with it being a strategic maneuver aimed at achieving an acquittal. Because trial counsel's representation of appellant did not fall below an objective standard of reasonableness, he has failed to satisfy the first *Strickland* factor. Moreover, because the case was tried to the bench, where the trial court is presumed to consider lesser-included offenses and offenses of an inferior degree, there was not a reasonable probability that the result of the trial would have been different. Appellant has therefore failed to satisfy the second *Strickland* factor as well. Accordingly, appellant's sole assignment of error is overruled.

{¶ 22} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____

DEENA R. CALABRESE, JUDGE

SEAN C. GALLAGHER, P.J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment:  William A. Klatt, J., retired, of the Tenth District Court
of Appeals.)