**[Cite as *Independence v. Murphy*, 2026-Ohio-464.]**

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF INDEPENDENCE,  :

    Plaintiff-Appellee,  :

                                No. 115268

    v.  :

TARA MURPHY,  :

    Defendant-Appellant.  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  February 12, 2026

---

Criminal Appeal from the Garfield Heights Municipal Court
Case No. TRC 2404700

---

### *Appearances:*

William T. Doyle, Independence Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Robert McCaleb, Assistant Public Defender, *for appellant.*

DEENA R. CALABRESE, J.:

{¶ 1} Following a bench trial held May 1, 2025, the trial court found defendant-appellant Tara Murphy ("appellant") guilty of all charges stemming from a traffic stop that occurred on October 6, 2024. Appellant presents a single assignment of error for our review:

Ms. Murphy's trial counsel was ineffective for failing to request a mistrial or new trial when previously unknown evidentiary issues were revealed in the middle of cross-examination of the government's sole witness, and for failing to make an adequate record for appeal.

{¶ 2} Finding no merit to appellant's claim of ineffective assistance of counsel, we overrule her sole assignment of error and affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} Following a traffic stop on Interstate 77 within the City of Independence (the "City"), appellant was charged in Garfield Heights Municipal Court with operating a vehicle while intoxicated ("OVI") in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree; speeding in violation of R.C. 4511.21(D)(5), a minor misdemeanor; and seatbelt violation in violation of R.C. 4513.263(B)(1), a minor misdemeanor. A bench trial commenced and concluded within one hour on May 1, 2025. The complete bench trial was recorded on video as well as transcribed, and both the video recording and transcript were provided with the record on appeal. The City's sole witness at trial was Ohio State Highway Patrol Trooper Cody Kupchella.

{¶ 4} By way of background, Trooper Kupchella testified that he had been employed by the highway patrol for close to six years. He stated that he had received training in detecting OVI impairment and had made approximately 100 OVI arrests in his nearly six years with the force. (Tr. 6.)

{¶ 5} Trooper Kupchella testified that at approximately 1:53 a.m. on October 6, 2024, he was traveling southbound on Interstate 77 in a marked vehicle

and "observed a vehicle that was in front of me that was passing traffic." (Tr. 7.) He pulled behind the vehicle to "pace" it, observing speeds that "varied between 80, sometimes reaching 90 miles an hour." (Tr. 7.) Trooper Kupchella turned on his lights to initiate a traffic stop, but the vehicle "was slow to stop." (Tr. 7.) He explained that he "had to engage [his] siren several times." (Tr. 7.)

{¶ 6} After the vehicle stopped within the City, Trooper Kupchella approached the passenger side on foot to engage the driver. He identified appellant as the driver of the stopped vehicle. (Tr. 8.) Trooper Kupchella testified that when he asked appellant for her driver's license, she first "handed [him] a credit card or some other miscellaneous card." (Tr. 9.)[1] He further "observed her speech to be slow and slurred," that "[s]he had red, bloodshot, glassed over eyes," and that "[t]here was an odor of an alcoholic beverage coming from the vehicle." (Tr. 9.)

{¶ 7} After returning to his patrol vehicle and running appellant's information, Trooper Kupchella repositioned his vehicle in preparation for a field-sobriety test. He testified that he then approached appellant's vehicle on the driver's side and asked her to submit to a field-sobriety test, but "she refused." (Tr. 9-10.) Trooper Kupchella testified that he attempted to explain the reasons for conducting field-sobriety tests and was "reassuring [appellant] that if no signs of impairment are observed, she won't be arrested." (Tr. 10.) They went "back and forth" in this

---

[1] Trooper Kupchella testified that while he could not say for sure if appellant handed him a credit card or a different type of card, it was not a driver's license. (Tr. 9.)

manner, with Trooper Kupchella standing near appellant's driver's side door. He testified:

> I did open the door. I get within close proximity of her. I can smell the odor of alcoholic beverage coming from her person at this point. I still observed her red — her eyeballs or her eyes being red and bloodshot and glassed over.

(Tr. 11.)

{¶ 8} Trooper Kupchella called a supervisor for backup. After the supervisor arrived, appellant was "removed from the vehicle and arrested" for driving under the influence. (Tr. 10 and 14.)

{¶ 9} At this point in the bench trial, the City played excerpts of body-camera video and audio from the encounter. The body-camera excerpt appeared as full-screen video in the bench-trial recording. While the body-camera video was playing, the courtroom camera at one point cut back to the trial-court bench and the trial court is seen to be observing the body-camera video intently. Trooper Kupchella followed up with testimony concerning the interactions, which included his conversations with appellant, the supervisor's arrival on scene, and appellant's ultimate arrest.

{¶ 10} Trooper Kupchella opined that based upon his experience, appellant was impaired:

> [W]henever my first approach, her motor skills are a little bit slow. She's given me a card that's not her ID. Her voice or her speech is slow and slurred. She's got the red, glassed over eyes. She admitted in consuming alcohol prior to being stopped. She — we have the varying speeds, the slow to stop. And then when the door was open, again, I was the — there was that odor of alcohol coming from inside the vehicle.

> When I transitioned to the driver's side, I opened the door in close proximity to her, getting her out, still in close proximity to her, there continuing to be an odor of alcoholic beverage coming from her person. So those were all the reasons why she was arrested.

(Tr. 15.) Based on his experience and observations, he opined that appellant was operating her vehicle "over the legal limit of .08[.]" (Tr. 16.)

{¶ 11} Trooper Kupchella further testified that appellant refused to engage in field-sobriety tests and blood-alcohol tests at every turn, including when she was removed from the vehicle and at the patrol post "after we were away from the scene and after more duration had passed." (Tr. 15-16.)

{¶ 12} On cross-examination, pertinent to this appeal, defense counsel referenced an "impaired driver report" that Trooper Kupchella prepared after the traffic stop. (Tr. 17.) He secured an admission that in preparing such a report, Trooper Kupchella "would want to include the important facts for the prosecutor, for the case . . . to support [his] position[.]" (Tr. 18.) Defense counsel followed up by securing a further admission from Trooper Kupchella. He asked whether "it would be important for . . . the prosecutor's case, the state's case, to differentiate if the odor is coming from the vehicle or from the person[.]" (Tr. 20-21.) Trooper Kupchella responded in the affirmative, clarifying:

> Yeah. So I think in the statement, I put initially, there was an odor coming from the vehicle. And then in close proximity of her, there was an odor of alcoholic beverage coming from her person.

(Tr. 21.)

{¶ 13} Defense counsel confronted Trooper Kupchella regarding this aspect of the report:

[DEFENSE COUNSEL]: I didn't read in the statement of facts where it was said that it was coming from my client. Is that in the statement of facts?

[TROOPER KUPCHELLA]: I believe it was. It should be.

[DEFENSE COUNSEL]: I don't see it.

(Tr. 21.) Counsel approached with his copy of the report (never admitted into evidence) and continued his cross-examination:

[DEFENSE COUNSEL]: And I'm sorry. I kind of marked up and underlined this, but I see that it's *coming from the vehicle*.

[TROOPER KUPCHELLA]: Yeah. So I just said when I approached the driver's side door, there was an odor of an alcoholic beverage coming from the vehicle.

[DEFENSE COUNSEL]: All right. Anywhere in there does it say that it was *coming from my client* after you removed her from the vehicle?

[TROOPER KUPCHELLA]: I don't see anything here about coming from your client.

[DEFENSE COUNSEL]: Okay. Thank you.

(Emphasis added.) (Tr. 21-22.)

{¶ 14} At this point, however, and thanks in part to the trial court's intervention, it became apparent that defense counsel and Trooper Kupchella might be referring to different versions of the report. After noting that the report placed in front of Trooper Kupchella was "used to refresh [his] recollection[,]" the trial court noted that the version attached to the citation appeared to "have like an extra paragraph." (Tr. 22.) Defense counsel asked if "there was a supplement[.]" (Tr. 23.) Trooper Kupchella testified:

[T]he one that the Court has is different from what you [defense counsel] have. I'm not sure why that would be, but the Court — the

copy that I submitted to the Courts is the one where . . . it does say close proximity to her. I mean, I'm not sure how you would have got that, but that's the one that was submitted and attached to her citation.

(Tr. 24.) Defense counsel noted that "[t]here must be multiple copies," (tr. 24.), and asked Trooper Kupchella:

[DEFENSE COUNSEL]: [Y]ou didn't submit two different ones, correct?

[TROOPER KUPCHELLA]: No. The one that got submitted would be the one that's attached to the citation. So, again, I'm not sure where that one came from that you have.

(Tr. 26.) Defense counsel's cross-examination then turned to other matters pertinent to appellant's defense, such as Trooper Kupchella's lack of knowledge concerning appellant's medical history and appellant's statement that she was returning from a funeral.

{¶ 15} The City conducted no redirect after cross-examination. The trial court, however, further probed the apparent discrepancy between the report that defense counsel had referenced and the report ultimately submitted with the citation. Trooper Kupchella stated that the one in defense counsel's possession "could have been a draft." (Tr. 33-34.) The trial court continued:

THE COURT: So am I correct in assuming or hearing from you that one is a preliminary report, and then the final report that was accompanied with the citation to the Court is the completed report?

TROOPER KUPCHELLA: So, this is the completed report, correct.

THE COURT: Okay.

TROOPER KUPCHELLA: I'm not — again, I'm not sure how this one was obtained, this is the one that's attached to —

THE COURT: Are you familiar with both of the reports?

TROOPER KUPCHELLA:  Yeah.  They're — yeah.

THE COURT:  Are you familiar with both of the reports?

THE COURT:  And are you the author of both those reports?

TROOPER KUPCHELLA:  Yes.

THE COURT:  And how are they different?

TROOPER KUPCHELLA:  Well, this one goes to talk about — this one with the more paragraphs just talks about the personal contact.  So after she gets out, searched, Mirandized, there's an odor of alcoholic beverage coming from her person within close proximity.

*That's about the only extra couple sentences that's added.*  Everything else is the same, *but this one just has a little paragraph about being in close proximity to her.*

(Emphasis added.)  (Tr. 34-35.)

{¶ 16} Via extensive discussion (on the record) with the bailiff and counsel, the trial court attempted to determine why different versions of the report might have found their way into the hands of the parties.  The prosecutor indicated that the version available to the court — i.e., the final version — might not have been electronically accessible to defense counsel.  When the trial court asked the prosecutor whether both "the municipalities and defense counsel" could access certain electronic records, the prosecutor replied: "Only we are.  It's accessible by us[,]" and defense counsel promptly stated: "Not the defense, Your Honor." (Tr. 37.)

{¶ 17} The trial court asked defense counsel whether he wished to ask any additional questions based on the "two different versions of the events."  (Tr. 37.) Defense counsel declined to ask further questions.  (Tr. 38.)

{¶ 18} Appellant then presented her Crim.R. 29 argument seeking acquittal as to the OVI charge. Defense counsel argued that the City had failed to meet its burden of proof beyond a reasonable doubt. Defense counsel did not mention the discrepancy between the reports, instead focusing on other aspects of the defense, such as the trooper's admission that appellant had mentioned the death of a loved one (possibly accounting for her bloodshot eyes), her calm demeanor and speech patterns during the traffic stop, and the absence of marked lane violations as signifying lack of impairment. The trial court overruled the Crim.R. 29 motion, but noted that defense counsel "did a good job outlining all of the purported inadequacies" in the City's case and "did a good job outlining all these things." (Tr. 40-41.)

{¶ 19} The defense rested without calling witnesses. Both sides offered brief closing arguments, with the defense principally incorporating the arguments from its Crim.R. 29 motion.

{¶ 20} The trial court immediately entered its verdict finding appellant guilty on all counts. It proceeded to sentencing, imposing a driver's intervention program, a fine, and probation.

{¶ 21} This timely appeal followed.

## II. Analysis

{¶ 22} To establish a claim of ineffective assistance of counsel, appellant "'must demonstrate that (1) his counsel was deficient in some aspect of his representation and (2) there is a reasonable probability that, were it not for counsel's

errors, the result of the trial would have been different.'" *State v. Thompson*, 2024-Ohio-5910, ¶ 5 (8th Dist.), quoting *In re S.A.*, 2019-Ohio-4782, ¶ 46 (8th Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694 (1984). As this court stated in *Thompson*, "'[T]he failure to make a showing of *either* deficient performance or prejudice defeats a claim of ineffective assistance of counsel.'" (Emphasis added.) *Thompson* at ¶ 5, quoting *In re S.A.* at ¶ 46. *See also State v. Davenport*, 2018-Ohio-2933, ¶ 25 (8th Dist.). To put it even more explicitly, "The failure to prove either prong of *Strickland's* two-part test makes it unnecessary for a reviewing court to consider the other prong." *State v. McCann*, 2025-Ohio-966, ¶ 18 (8th Dist.), citing *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

{¶ 23} "Deficient performance, the first prong of the *Strickland* test, requires a showing 'that counsel's representation fell below an objective standard of reasonableness.'" *McCann* at ¶ 18, quoting *Strickland* at 688. "In Ohio, every properly licensed attorney is presumed to be competent and, therefore, a defendant claiming ineffective assistance of counsel bears the burden of proof." *In re S.A.* at ¶ 47, citing *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). *See also McCann* at ¶ 18. Moreover, "Counsel's tactical decisions or trial strategy cannot form the basis for a claim of ineffective counsel." *In re S.A.* at ¶ 47, citing *State v. Foster*, 2010-Ohio-3186, ¶ 23 (8th Dist.). *See also State v. Clayton*, 62 Ohio St.2d 45 (1980).

{¶ 24} Reviewing courts "'will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *McCann* at ¶ 17, quoting *State v. Powell*, 2019-Ohio-4345,

¶ 69 (8th Dist.); *see also Strickland* at 689 (A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."). We therefore afford "great deference" to "trial counsel's performance and tactical decisions and trial strategies." *McCann* at ¶ 17. Even "debatable" or "questionable" trial tactics generally "do not constitute ineffective assistance of counsel." *State v. Harris*, 2022-Ohio-4630, ¶ 50 (8th Dist.), citing *State v. Scarton*, 2020-Ohio-2952, ¶ 90 (8th Dist.). Appellate courts therefore "'ordinarily refrain from second-guessing strategic decisions counsel make at trial,' . . . even where appellate counsel argues that he or she would have defended against the charges differently." *Scarton* at ¶ 90, quoting *State v. Myers*, 2002-Ohio-6658, ¶ 152. *See also State v. Stewart*, 2024-Ohio-5802, ¶ 54 (8th Dist.).

{¶ 25} We first address the second component of appellant's assignment of error, i.e., her contention that trial counsel failed to make an adequate record for appeal. That argument has no merit. While neither Trooper Kupchella's draft report nor his final report were admitted into evidence, the trial transcript conveys the differences between Trooper Kupchella's draft and final reports, with the distinctions clarified in large part by the trial court's intervention. In short, the final report, as paraphrased by Trooper Kupchella, indicated he noticed "an odor of alcoholic beverage coming from her person within close proximity." (Tr. 34-35.) The draft report did not. This is clear from the testimony, and the differences between the versions of the reports were then explored with the City's sole witness.

We cannot conclude that appellant's counsel was ineffective based on a failure to make an adequate record for appeal.

{¶ 26} We also reject appellant's contention that trial counsel was ineffective in not moving for a mistrial or new trial, or in not further cross-examining Trooper Kupchella regarding the different versions of the reports. Even if there was some discovery snafu that resulted in only the draft report landing in trial counsel's hands, the existence of distinct versions and the differences between them came to light during trial counsel's cross-examination of Trooper Kupchella. The trooper had testified on direct that he opened the driver's side door of appellant's vehicle, got "within close proximity of her," and could "smell the odor of alcoholic beverage coming from her person[.]" (Tr. 11.) Appellant's trial counsel sought to impeach the trooper using a version of his report that *did not* specify that he smelled alcohol coming from appellant's person.

{¶ 27} The version of report in defense counsel's hands turned out to be Trooper Kupchella's draft report rather than his final report. But the transcript reflects that this ultimately became clear to everyone in the room, including (perhaps most importantly) the trial judge, who requested an explanation for the existence of multiple versions of the report and further questioned Trooper Kupchella regarding the differences between the versions. In addition to the transcript, we are fortunate to have video of the entire bench trial. The video footage, unlike the transcript, reveals the time the trial court spent comparing the printed draft report to the version of the report on its computer screen. The trial court

expended considerable time and effort in its comparison before seeking further clarification. At one point, the trial court even pointedly placed an index finger on the draft report to mark its place before turning to a computer screen, then back to the draft.

{¶ 28} Even though appellant's counsel had not initially realized he was cross-examining Trooper Kupchella using a draft report, by this point, he had exposed two facts that called the trooper's credibility into question: First, that Trooper Kupchella had prepared at least one version of the report that was arguably inconsistent with his testimony or at least omitted a key fact; and second, that Trooper Kupchella had indisputably added a passage to the report between the draft and final versions, specifically language favorable to the City's case. Defense counsel was also aware — as we are, thanks to the video of the trial — that the trial court looked long and hard at the competing versions of the report. The discrepancy arguably enhanced the defense's impeachment of the City's sole witness.

{¶ 29} Whether viewed through the lens of tactical decisions and trial strategy (the first prong of *Strickland*) or prejudice (the second prong of *Strickland*), we find no merit to appellant's argument that counsel was ineffective in failing to move for a mistrial, a new trial, or in other respects. First, we turn to tactical decisions and trial strategy. Appellant argues that her trial counsel should have asked for a mistrial or new trial based on discovery violations that possibly led to trial counsel's possession of Trooper Kupchella's draft report rather than his final report. In addition to arguing that her trial counsel should have moved for a mistrial

or new trial, appellant further suggests that trial counsel inappropriately failed to cross-examine Trooper Kupchella further regarding the discrepancy between the reports. Appellant suggests that the disclosure of different reports indicates that "clearly something went wrong with discovery" and that "clearly it adversely affected the defense's strategy." (Appellant's brief at p. 15.)

{¶ 30} None of these arguments are compelling. An alternative view of the record is that appellant's trial counsel appropriately cross-examined the trooper on one inconsistency and then fortuitously stumbled into a second, prompting the trial court itself to take the witness to task on the differences between the two reports. We have already noted that the discrepancy between the draft report and final report arguably enhanced appellant's impeachment of the City's sole witness. The discrepancy was pointedly observed by the trial court. We cannot say it was an unreasonable tactical decision to quickly move on to other cross-examination subjects rather than give the trooper more opportunities to confirm, on the witness stand, that he smelled alcohol on appellant's person.

{¶ 31} We also find that trial counsel's decision to continue with trial rather than seek a mistrial or new trial fell within the realm of reasonable tactical decisions and trial strategy. Trial counsel established that Trooper Kupchella, in his draft report, had not noted the smell of alcohol coming from appellant's person. The existence of a final report *adding* that language only enhanced the probity of the omission. The case was tried to the bench, and the trial court was acutely aware of the differences between the two reports. Under these circumstances, we cannot find

that trial counsel was deficient in his representation of appellant. It was reasonable to continue the trial with the inconsistency or omission not only freshly revealed to the trial court, but also at least partially on the court's own initiative.[2] Even if the decision not to move for a mistrial or new trial was a mistake, it was "not the kind of egregious and unprofessional conduct condemned by *Strickland*[,]" but rather "fell within the wide range of reasonably professional assistance[.]" *State v. Seiber*, 56 Ohio St.3d 4, 11 (1990).

{¶ 32} Furthermore, and dovetailing with our prejudice analysis below under the second prong of *Strickland*, it was not as if the City's case rested on either Trooper Kupchella's draft or final reports. The City presented Trooper Kupchella as a live witness and did not seek to introduce any report into evidence. The trooper testified to his observations of appellant and identified body-camera footage from the traffic stop. On cross-examination, appellant's trial counsel successfully pointed to the omission in the draft report of any reference to the smell of alcohol coming from appellant's person. The record was then clarified to reflect that the draft also differed from the final report on this point, and trial counsel moved on. We do not view the version discrepancy as the smoking gun that might have undone the City's case, and nothing suggests appellant's trial counsel should have viewed it as such.

---

[2] We do not agree with the City's argument that a mistrial resulting in a retrial "would proceed on the final version of the report, eliminating the inconsistency Counsel exploited." (City's brief at p. 6.) The City has not cited any authority suggesting that if the case were retried, the defense could not cross-examine Trooper Kupchella on differences between his draft report and his final version. Evid.R. 613 would appear to allow such cross-examination. As already noted, however, that brand of impeachment had essentially occurred, with the trial court itself noting the differences between the reports.

Instead, in his Crim.R. 29 motion and closing argument, trial counsel highlighted the trooper's admission that appellant had mentioned the death of a loved one, which might account for her bloodshot eyes; that appellant spoke clearly and calmly during the traffic stop; that the scent of alcohol is not illegal and does not prove impairment beyond a reasonable doubt; and that speeding, especially in the absence of marked lane violations, likewise does not demonstrate impairment.

{¶ 33} Trial counsel's decision to focus on these aspects of the case, while ultimately unsuccessful, was not unreasonable. Even if another attorney might have handled the trial differently, we cannot say that trial counsel's decisions establish that his representation of appellant was so deficient that it fell below an objective standard of reasonableness. Those decisions instead fell "within the ambit of trial strategy, and debatable trial tactics do not constitute ineffective assistance of trial counsel." *State v. Pawlak*, 2014-Ohio-2175, ¶ 87 (8th Dist.), citing *State v. Lawson*, 64 Ohio St.3d 336, 341 (1992), and *State v. Leonard*, 2004-Ohio-6235, ¶ 146. In light of all this, we cannot say that trial counsel was ineffective under the first prong of *Strickland*.

{¶ 34} Moreover, even if appellant succeeded on the first prong of *Strickland*, she cannot show that she was prejudiced, i.e., that if it were not for counsel's errors the result of the trial would have been different. This court has explained:

> An appellant alleging ineffective assistance of counsel because his attorney failed to move for a mistrial must establish that the trial court probably would have or should have declared a mistrial. *State v.*

*Seiber*, 56 Ohio St.3d 4, 564 N.E.2d 408 (1990), citing *State v. Scott*, 26 Ohio St.3d 92, 95-96, 497 N.E.2d 55 (1986). A mistrial should not be ordered in a criminal case merely because some error or irregularity has occurred. *State v. Jones*, 10th Dist. Franklin No. 12AP-1091, 2014-Ohio-674, ¶ 19, citing *State v. Reynolds*, 49 Ohio App.3d 27, 550 N.E.2d 490 (2d Dist.1988). It is only appropriate when the substantial rights of the accused or prosecution are adversely affected, and a fair trial is no longer possible. *Illinois v. Somerville*, 410 U.S. 458, 462-463, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991).

*Pawlak* at ¶ 89. *See also State v. Scales*, 2024-Ohio-2171, ¶ 39 (8th Dist.). Nothing in the present case suggests that a motion for a mistrial or a new trial probably would or should have been granted. Even if we accept that the belated disclosure of different versions of the report was an irregularity, the differences were explored during the trial. Nothing indicates that the trial court probably would have or should have declared a mistrial, i.e., that the irregularity affected a substantial right of appellant and rendered a fair trial impossible. This is especially true in this case, which was tried to the bench. In the bench trial context, "a presumption arises that a judge considers 'only the relevant, material and competent evidence in arriving at a judgment, unless the contrary affirmatively appears from the record.'" (Cleaned up.) *State v. Buckley*, 1995 Ohio App. LEXIS 5181, *9-10 (8th Dist. Nov. 22, 1995), quoting *State v. Eubank*, 60 Ohio St.2d 183, 187 (1979).

{¶ 35} Appellant cites *Cleveland v. Holley*, 2020-Ohio-1275 (8th Dist.), but that case is inapposite. In *Holley*, text messages from the victim suggested that the victim, rather than Holley, was the aggressor in the assault at issue. Holley's trial attorney, however, failed to use the text messages at trial and disclosed their existence only during sentencing. The trial court, having already found Holley

guilty, stated, "[I]t's too bad that these were not included in trial," and "[T]his could've been handled in a much different way." (Cleaned up.) *Id.* at ¶ 6-7. The trial court, also at sentencing, even read some of the text messages aloud. Those messages reflected that the victim might have been the aggressor. *Id.* at ¶ 12. On appeal, this court concluded that the trial court's remarks, including the content of the messages, "demonstrate[d] that had Holley's trial counsel introduced the text messages as evidence, *the result of the proceeding could have been different.*" (Emphasis added.) *Id.* Accordingly, this court found that by not introducing the exculpatory text messages or moving for a new trial, Holley's trial counsel was deficient in representation and Holley was prejudiced. *Id.* at ¶ 12-13.

{¶ 36} Unlike in *Holley*, in the present case, the relevant items (the two reports) were compared and discussed during the trial itself. The trial court had no occasion to lament the failure to explore the inconsistency because it was, in fact, explored. As a result, unlike in *Holley*, there is nothing to suggest the proceeding would have concluded with an acquittal if trial counsel had employed a different strategy or that the trial court would have granted a mistrial or new trial. In the present matter, the City's case rested principally on live testimony from Trooper Kupchella, who testified that upon his first encounter with appellant when he approached the passenger side of her vehicle, "[t]here was an odor of an alcoholic beverage coming from the vehicle." (Tr. 9.) He further testified that appellant handed him a credit card or other type of card when asked for her driver's license, that he observed a smell of alcohol coming from her person when she exited the

vehicle, and that she consistently refused all sobriety tests. The discrepancy between the draft and final reports did not negate or seriously undercut Trooper Kupchella's live testimony, especially where the trial court also had the opportunity to view body-camera footage of the trooper's interactions with appellant during the traffic stop and where there was no other identifiable source for the alcohol smell. The revelation that there were two reports did not result in the defense being "stuck with an unworkable trial strategy." (Appellant's brief at p. 14.) As explained above, not only was impeachment based on the report merely one component of appellant's multifaceted trial strategy, the impeachment was arguably enhanced by the revelation that the final report added language favorable to the City's case. Under these circumstances, we find that there was no reasonable probability of a different outcome. Accordingly, appellant has failed to demonstrate prejudice. Appellant's sole assignment of error is overruled.

{¶ 37} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

MICHELLE J. SHEEHAN, A.J., and
SEAN C. GALLAGHER, J., CONCUR